UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
                Plaintiff,          CRIMINAL NO. 05-80955
                                        HON. AVERN COHN

       v.

D-2 DEMETRIUS EDWARD FLENORY ,
            Defendant.
_____/

**GOVERNMENT'S MOTION FOR REVOCATION OF ORDER OF
PRETRIAL RELEASE AND BRIEF IN SUPPORT**

The government moves this court to revoke the order of pre-trial release issued by the magistrate judge on January 4, 2006.

On October 20, 2005, Defendant Demetrius Edward Flenory was charged in a ten count indictment with Conspiracy to Distribute 5 kilograms or more of Cocaine, in violation of 21 U.S.C. §§ 846 and 841; Continuing Criminal Enterprise, in violation of 21 U.S.C. §§ 848 (a) and ©; Possession with intent to Distribute Cocaine, in violation of 21 U.S.C. § 841; Use of Communication Facility in the Facilitating the Commission of Violations of the Controlled Substances Act, in violation of 21 U.S.C. § 843(b); and Conspiracy to Launder Monetary Instruments, in violation 18 U.S.C. § 1956.

On December 21, 2005 Defendant made his initial appearance in this district and was arraigned on the indictment. The government requested detention and, with the consent of counsel, the hearing was scheduled for January 4, 2006.

On January 4, a lengthy hearing was conducted by Magistrate Judge Whalen. In the course of the hearing, the magistrate acknowledged that the charges contained in the indictment

raised the rebuttable presumption of detention contained in 18 U.S.C. § 3142(e).

Two pretrial Service Reports were made part of the record. Pretrial Services in this district recommended detention on the basis that defendant was both a danger to the community and a flight risk.  Additionally, pretrial services for the Eastern District of  Texas recommended detention on a charge of felon in possession of a firearm, an offense which was discovered during defendant's arrest in this case. Magistrate Don D. Bush in the Eastern District of Texas followed that recommendation, finding that defendant's use of  multiple assumed names; his history of presenting false identification to law enforcement officers; his inability to provide addresses for the businesses of which defendant claimed to own; his access to substantial assets; and his lack of community ties to the Eastern District of Texas warranted detention.

Testimony was presented by DEA Special Agent Robert Bell which established the following facts:

1. Defendant Demetrius Flenory is the co-leader, along with his brother, Terry Flenory of a multi-kilogram cocaine organization, currently known as Black Mafia Family ("BMF").  This drug organization has been in existence since the early 1990's.

2. The BMF drug organization has distributed thousands kilograms of cocaine on a monthly basis, with distribution and or the facilitation of such distribution extending, geographically, to eleven states, and possibly more.

3. During the course of investigation of BMF, law enforcement has seized nearly 500 kilograms of cocaine and $6.5 million dollars from the organization.

4. Between 20 and 30 witnesses have provided information to law enforcement

regarding BMF's drug activities. At least ten of those witnesses provided information of Demetrius Flenory's direct involvement in the cocaine distribution activities of the organization. These witnesses were personally involved in the distribution of cocaine under defendant's leadership and/or observed defendant distribute or facilitate drug transactions.

5. Defendant was intercepted during a federal court ordered wiretap, wherein defendant identified himself by name during a conversation which included Terry Flenory and family members of co-defendant Calvin Sparks. The subject of the conversation was Sparks' arrest in Florrisant, Missouri, along with co-defendant Christopher Triplett with 9 kilograms of cocaine. During the conversation, Calvin Sparks' brothers expressed Sparks' concern that Triplett was cooperating with the government on the case. Demetrius Flenory assured the Sparks brothers that Triplett was not cooperating with the government because the lawyer representing Triplett would notify Flenory if such a thing happened. Demetrius also assured the brothers that Triplett would accept responsibility for the drugs. Demetrius ended the conversation by advising the Sparks brothers that he had deposited $1,000 in Calvin Sparks' account and he would provide transportation and lodging to the Sparks brothers so that they could visit Sparks and attend Sparks' court appearances.

6. As a result of the substantial quantity of drugs distributed by defendant's organization, defendant has access to substantial assets. Defendant owns luxury vehicles, expensive homes and has financed extravagant parties, one of which

    featured exotic animals, including a tiger, a gorilla and a zebra. On April 3, 2005, defendant was arrested while traveling in a Bentley luxury vehicle. In the course of this arrest, law enforcement officials seized jewelry which has been appraised at $2.7 million dollars. Upon defendant's arrest on October 20, 2005, police seized, among other things, a 2004 Bentley Continental GT, a 2005 Dodge Magnum, a Ford F150 Pickup Truck, and jewelry valued at approximately $695,000.  Defendant was arrested in his Frisco, Texas home, which although rented by defendant, is valued at $1.2 million dollars.  Witnesses have also informed law enforcement through a nominee, defendant leases a home in Miami, Florida at a rate of $30,000 a month.  Records obtained during the investigation corroborate these witnesses.  In a 2005 promotional video for the release of an album for BMF Entertainment's  "rap" artist, Blue DaVinci, Demetrius Flenory claimed   that BMF had invested $500,000 to one million dollars in this single artist, and it can do that because ["BMF ] **already** has all the "money, cars, houses, clothes, jewelry and ho's."

7.    Law enforcement seized firearms from three of defendant's residences during the execution of search warrants. Specifically, on November 17, 2003, law enforcement seized 3 firearms and documentary evidence of BMF activities from defendant's residence located at 6086 Belair Lake Road, Lithonia, Georgia, which is a property that is included in the indictment as subject to forfeiture.  On November 23, 2004, two firearms along with controlled substances were seized from defendant's residence located at 4363 Paran Place, Atlanta, Georgia.

      Finally, three firearms were seized during defendant's arrest on this indictment at his home located at 5173 Brandywine Lane, Frisco, Texas.

8. Defendant has numerous contacts with law enforcement. Defendant has been arrested 12 times on charges which include drugs, weapons and assaultive offenses. Defendant has a 1988 felony offense for possession of 25 to 49 grams of a controlled substance which was disposed of via the Holmes Youthful Trainee Act; a 1990 felony conviction for carrying a concealed weapon; and a 2000 misdemeanor conviction for driving under the influence. In addition to the indictment in this case, he has three other pending charges: murder, forgery/ giving a false name to police and felon in possession of a firearm. Defendant has been arrested on charges involving firearms on four occasions. He has been arrested on drug charges four times. Defendant's criminal history also includes arrests on assaultive charges. One is a pending murder charge in Atlanta, Georgia and a 1996 arrest for aggravated assault. Since being placed on bond for the murder charge in 2003, defendant has been arrested on three occasions. On August 25, 2004, defendant was arrested in New York, along with five other BMF members. A weapon and $23,000 was seized by police. Defendant was arrested on April 3, 2005 in possession of diamond and gold jewelry valued at $2.7 million dollars. On October 20, 2004, defendant was arrested in Dekalb County, Georgia on charges of forgery first degree, giving a false name to police, financial identity fraud and criminal interference with government property. This charge resulted from defendant having provided the alias, "Ricardo Santos", to

purchase a airline ticket and using a Tennessee driver's license in that name in order to travel via Delta Airlines. Defendant is currently on a $33,500 bond, which he posted.

9. Defendant is associated with nine known alias. He has possessed five driver's licenses in five different names, which were issued in four different states. Defendant has had a Michigan driver's licenses in the name of "Rico Seville," a Georgia license in the name of Ronald Bernard Ivory; a Tennessee license in the name of Ricardo Santos, and a California license in the name of Aundrez Mailik Carothers. Defendant provided a false name to law enforcement during four of his arrests. Additionally, defendant has used and or provided to law enforcement authorities five different social security numbers and four different dates of birth.

10. Defendant has two outstanding Michigan warrants for failure to pay child support for his two daughters in the amount of $32,773 and $29,265, respectively.

11. In the course of his arrest on the instant case, law enforcement seized marijuana, ecstasy, and three weapons from defendant's house. One of the weapons was a high velocity weapon capable of overcoming bulletproof vests and known as a "cop killer."

12. In the course of the detention hearing through one of his lawyers and in statements made to pretrial services, defendant admitted to being the owner of BMF entertainment and executive editor of Juice Magazine. He claimed that he earned $20,000 to $30,000 monthly from these sources. During his pretrial services interview in the Eastern District of Texas, defendant failed and or refused

      to provide addresses for these businesses. Records obtained during the investigation reveal that BMF Entertainment was incorporated in March of 2004 by a person named Leigh Cantafio. BMF Entertainment has not been issued a federal tax identification number by the Internal Revenue Service nor has BMF Entertainment ever filed a corporate income tax return. Moreover, defendant has not filed a personal income tax return since 1999.

13. Defendant has admitted that he has traveled to Morocco, Bahamas, Mexico, Dominican Republic and Spain in the last three years. These travels have included the use of private jets. Witnesses have stated that defendant has used private jets to transport kilograms of cocaine on various occasions.

14. To date, law enforcement has seized the following from the organization: 7 million dollars in cash, 30 vehicles valued between one and two million dollars; 10 million dollars in real estate, 7 million dollars in jewelry, approximately 37 firearms, nine of which were recovered from defendant's various residences or a vehicle occupied by defendant and nearly 500 kilograms of cocaine.

In spite of all this evidence and the rebuttable presumption in favor of detention, the magistrate determined that there were conditions which would protect the community and assure his presence at trial. These conditions included a $100,000 *unsecured* bond, house arrest in his mother's home, GPS monitoring, and no weapons.

The government contends that these conditions do not in fact protect the community or assure defendant's presence at trial.

First, the evidence made it very clear that defendant has access to substantial assets.

Given these circumstances, an unsecured bond does nothing to assure defendant's presence at trial. If any bond is to set, it should not be a personal bond. A substantial cash bond with untainted money would be a minimum requirement to any release under the facts of this case and even this may be insufficient because the government has no way of knowing the extent of defendant's current access to assets which may be substantially higher than the cash bond. Further, it did not apparently bother the magistrate that defendant claimed substantial income from a business which has the indicia of illegality based in part on it's failure to file tax returns as well as his own failure to file personal returns.

The GPS tether is useful insofar as it leaves real time evidence of the location of the tether. It does not indicate whether the tether is on the defendant nor is it of much use if the defendant cuts it off and uses a private aircraft to leave the jurisdiction. By the time law enforcement is able to respond, defendant will be long gone.

The house arrest is equally ineffectual. It is clear that defendant's mother has had little control over defendant, his conduct or his life style. Indeed, during the detention hearing, defendant's mother, in response to the condition that defendant not possess firearms, told the court that she had a registered gun in her house. The magistrate told her that the gun would have to go. The absurdity of this statement is clear: there is no way for the magistrate or anyone else to determine whether she does, in fact, remove the gun nor is there any authority to search the house on a regular basis to assure that there are no firearms in the residence.

Further, neither the tether nor the house arrest will prevent defendant from conducting illegal business from his mother's house.

On the question of firearms, the Magistrate acknowledged that everywhere defendant

goes he appears to have a weapon but nonetheless, decided that a condition that he not possess a firearm will be sufficient to protect the community. The fact that defendant has a prior felony conviction means that he cannot lawfully possess a firearm, a fact which apparently escaped him, given his recent arrest for felon in possession.  In effect, the magistrate's order that he not possess firearms is nothing more than an order for him not to do that which he cannot lawfully do in any event. This is hardly a condition which will assure that he will not have possession of a firearm and completely disregards the fact the defendant has a prior weapons conviction and that he has been arrested on weapons offenses at least three times in the past.

The magistrate found no value in the findings from the Texas magistrate because one of the reasons was that defendant had no connection to the Eastern District of Texas. Apparently, this finding was enough to negate the other reasons given by the Texas magistrate. Even so, it must be noted that while defendant has family in this district, it is clear that most of his connections lie elsewhere.

The magistrate also found little value in the fact that defendant has used aliases on a regular basis. He did so on the basis of the fact that when defendant was arrested on the murder charges and on the instant charge, he did not use a false name. It was pointed out that on those two occasions, the police knew who he was and were specifically looking for him. Giving an alias would have been futile. However, in those instances where defendant was stopped by officers who did not know his identity, he gave a false name.  Under these circumstances, contrary to the magistrate's statements, the lack of aliases on two occasions cannot support an order of release.

Finally, in spite of the testimony presented, the magistrate stated his wholly subjective belief that the case against defendant was not particularly strong. This, in spite of the fact that there are numerous witnesses who will testify to defendant's culpability.

In making his decision to grant release, the Magistrate disregarded virtually all of the evidence noted above which, in combination with the statutory presumption, clearly lead to a conclusion that detention is appropriate. Further, as also noted above, even if the magistrate is somehow correct in his belief that release is appropriate, the conditions he has set are wholly devoid of the statutory requirement that these conditions reasonably assure the safety of the community and the defendant's appearance at trial.

Accordingly, based on the above argument, the government requests that this court revoke the magistrate's order of release and enter an order of detention.

>Respectfully submitted,
>STEPHEN J. MURPHY
>United States Attorney
>
>s/Dawn N. Ison
>
>_____
>Assistant United States Attorney
>211 West Fort Ste. 2001
>Detroit, MI 48226
>Phone No. (313) 226-9567
>Bar No.  P43111
>Dawn.Ison@usdoj.gov
>
>
>s/Michael C. Leibson
>
>_____
>Assistant U.S. Attorney
>211 West Fort Ste. 2000
>Detroit, MI 48226
>Phone No.  (313) 226-9615
>Michael.Leibson@usdoj.gov

Dated:  January 11, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on  January 11, 2006 , I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

James L. Feinberg & Associates

I further certify that I have mailed by United States Postal Service the document to the following non-ECF participant:

                                      s/Dawn N. Ison

                                      Assistant United States Attorney
                                      211 West Fort Ste. 2001
                                      Detroit, MI 48226
                                      Phone No. (313) 226-9567
                                      Bar No.  P43111
                                      Dawn.Ison@usdoj.gov

                                      s/Michael C. Leibson

                                      Assistant U.S. Attorney
                                      211 West Fort Ste. 2000
                                      Detroit, MI 48226
                                      Phone No.  (313) 226-9615
                                      Michael.Leibson@usdoj.gov

Dated:  January 11, 2006