UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,        )
Plaintiff,                       )
                                 )      CRIMINAL NO. 05-80955
v.                               )      HON. AVERN COHN
                                 )
D-2  DEMETRIUS EDWARD FLENORY,   )
Defendant.                       )
_____  )
_____/

MICHAEL C. LIEBSON (P24092)            JULIE A. BECK (P53291)
Assistant United States Attorney       Assistant United States Attorney

DAWN N. ISON (P43111)
Assistant United States Attorney


JAMES L. FEINBERG (P13341)             DREW FINDLING (Ga. Bar No. 260425)
James L. Feinberg & Associates         Attorney for Defendant
Attorney for Defendant                 The Findling Law Firm
535 Griswold, 2632 Buhl Building       3490 Piedmont Road NE, Suite 600
Detroit, Michigan                      Atlanta, Georgia 30305
(313) 962-8280                         (404) 460-4500

_____/

### DEFENDANT DEMETRIUS FLENORY'S MOTION TO SUPPRESS EVIDENCE ARISING FROM THE UNLAWFUL SEARCH OF  THE RESIDENCE LOCATED AT 6086 BELAIR LAKE ROAD, LITHONIA, DEKALB COUNTY, GEORGIA AND BRIEF IN SUPPORT

NOW COMES this Defendant, DEMETRIUS EDWARD FLENORY, by and through

counsel, James L. Feinberg and Drew Findling, and moves to suppress all unlawfully seized

evidence obtained as a result of the November 17, 2003, search of 6086 Belair Lake Road,

1

Lithonia, DeKalb County, Georgia, and in support thereof, represents the following to this Honorable Court:

1.      On November 17, 2003, the Drug Enforcement Administration ("DEA") through Atlanta Task Force Agent ("TFA") John Koerts applied for and was granted a DeKalb County Search Warrant for 6086 Belair Lake Road, Lithonia, DeKalb County, Georgia.

2.      The Affidavit & Application for a Search Warrant form completed by TFA Koerts stated that there was probable cause to believe the following two offenses were being or had been committed: Violation of Georgia Controlled Substances Act ("VGCSA"), more specifically Trafficking Cocaine, more than 28 grams, and Possession of a Firearm During VGCSA.

3.      The Affidavit & Application for a Search Warrant form completed by TFA Koerts listed the items to be seized as a result of this search as: "Drug records, drug proceeds, firearms (further descibed [sic] on schedule B)."

4.      Attached to the Affidavit & Application for a Search Warrant Submitted by TFA Koerts were an Affidavit, Schedule A (further describing the property to be searched), and Schedule B (further describing the items to be seized).

5.      The search warrant was issued on November 17, 2003, and was executed later that same day by agents from DEA Task Force Group 2.

6.      All items seized as a result of this search warrant were maintained in DEA custody.

7.      The Return of Search Warrant & Inventory form completed indicates that the Search Warrant and five (5) pages (on DEA forms) constituting a receipt for property seized were left on the kitchen counter inside the residence located at 6086 Belair Lake Road.

8.      Due to the extensive involvement of Federal agents throughout the investigation, application for warrant, search, and subsequent handling of property, this search was a Federal search pursuant to Lustig v. United States, 338 U.S. 74, 79 (1949), and United States v. $22,287.00 in U.S. Currency, 520 F. Supp. 675 (E.D. Mich. 1981), and was therefore subject to the provisions of Rule 41 of the Federal Rules of Criminal Procedure.

9.      The Affidavit submitted in support of the search warrant executed at 6086 Belair Lake Road contains misstatements which were made either deliberately or with reckless disregard for the truth.  Further, information has been omitted from this Affidavit either deliberately or with reckless disregard for the truth.  Without such misstatements and/or with the omitted information, probable cause would not have existed for the search.  For this reason, all evidence obtained as a result of this search should be suppressed pursuant to  Franks v. Delaware, 438 U.S. 154 (1978).

10.     The Affidavit submitted in support of the search warrant executed at 6086 Belair Lake Road relies on information provided by seven (7) confidential informants ("CIs").  The Affidavit only attests to the reliability of one CI.  There are no statements in the Affidavit as to the reliability or veracity of the other six (6) CIs.  The Affidavit contains no significant corroboration of information provided by any of the CIs.  The Affidavit also fails to provide any details as to the basis of the knowledge of these CIs.  Given the "totality-of-the-circumstances," a fair probability did not exist that contraband or evidence of a crime would be found as a result of the search.  Therefore, the evidence seized as a result of this search should be suppressed pursuant to  Illinois v. Gates, 462 U.S. 213, 239 (1983).

11.     Items seized during the execution of the search warrant at 6086 Belair Lake Road, were beyond the scope of the search warrant, did not fall within the "plain view" exception, and should therefore be suppressed pursuant to <u>Brindley v. Best</u>, 192 F.3d 525, 533 (6th Cir. 1999).

12.     In light of the above, this Court should hold that the search of 6086 Belair Lake Road was conducted in violation the Fourth Amendment and should suppress all evidence seized as a result of this search.

13.     In the alternative, this Court should suppress the items seized that exceeded the scope of the search warrant.

14.     The Defendant presents this motion at this time because the large number of searches and large amounts of evidence seized at each search would have proven unmanageable to address before  knowing which exhibits the Government intends to introduce, and the Defendant was not provided with an Exhibit List from the Government until October 1, 2007.

15.     The Government does not concur in the relief requested.

WHEREFORE, this Defendant, DEMETRIUS EDWARD FLENORY, respectfully requests this Honorable Court to conduct an evidentiary hearing and to enter an Order suppressing the evidence seized from 6086 Belair Lake Road on November 17, 2003.

**BRIEF IN SUPPORT**

**I.     FACTS**

Demetrius Edward Flenory is charged in Counts One, Three, Four, Ten, Twelve, and Thirteen in the Thirteen-Count Indictment in this case.  The respective charges are as follows: Conspiracy to Distribute 5 Kilograms or More of Cocaine, Continuing Criminal Enterprise, Possession with Intent to Distribute More Than 500 Grams of Cocaine, Conspiracy to Launder Monetary Instruments, and two counts of Possession with Intent to Distribute More Than 5 Kilograms of Cocaine.  On October 1, 2007, the United States Attorney's Office provided counsel for Defendant Demetrius Flenory an Exhibit List which included items seized as a result of the November 17, 2003, search of a residence located at 6086 Belair Lake Road, Lithonia, DeKalb County, Georgia.

Task Force Agent ("TFA") John Koerts, an investigator with the DeKalb County Police Department, was detailed to a Drug Enforcement Administration ("DEA") Task Force for approximately three (3) years prior to November 17, 2003.  On November 17, 2003, TFA Koerts submitted an affidavit and application for a DeKalb County search warrant to search a residence located at 6086 Belair Lake Road, Lithonia, DeKalb County, Georgia ("6086 Belair Lake Road"). (This affidavit and application, Bates Stamp Nos. 03921-03941, are attached hereto as Exhibit 1 ("Aff.").)  In this affidavit and application, TFA Koerts stated that there was probable cause to believe the following two offenses were being or had been committed: Violation of Georgia Controlled Substances Act ("VGCSA"), more specifically Trafficking Cocaine, more than 28 grams, and Possession of a Firearm During VGCSA.  (Aff. at 03921).  The Affidavit & Application for a Search Warrant form completed by TFA Koerts listed the items to be seized as:

"Drug records, drug proceeds, firearms (further described [sic] on schedule B)."  Id.  Attached to

the Affidavit & Application for a Search Warrant Submitted by TFA Koerts were an Affidavit, a

Schedule A (further describing the property to be searched), and a Schedule B (further describing

the items to be seized).  (Aff. at 03932-33.)

  The Probable Cause portion of the affidavit begins by referring to Demetrius Flenory as

the subject of DEA investigations in both Detroit and Atlanta (Aff. at 03924, ¶ 5.),   and the

information provided in the affidavit in support of this search warrant is largely, if not completely

based, upon various DEA investigations at different times and in different jurisdictions and

information provided by DEA informants (see, e.g., Aff. at 03924-31, ¶¶ 6, 7, 9, 16-21, 23-25, 27-

37, all referencing DEA investigations).

  Seven (7) Confidential Informants ("CIs") provided information used in preparation of this

affidavit.  In January 1998, CI #1 provided information that Demetrius Flenory was involved in

the 1997 shooting death of a federal witness.  (Aff. at 03924, ¶ 7.)  However, "[d]espite intensive

follow-up investigation by [the Atlanta Police Department ("APD")] and DEA, detectives and

agents were unable to develop any further evidence linking [Demetrius] Flenory to the Walker

murder…."  Id.  No further information is provided regarding this information provided by CI #1.

CI #2 reported in August 2001 that Demetrius Flenory was living "in a huge house off Evans Mill

Road in Lithonia, Georgia," and that Demetrius Flenory owned a white van equipped with

concealed compartments which was used to transport cocaine.  (Aff. at 03926, ¶ 16.)  On August

15, 2001, CI #2 directed two DEA Atlanta agents to the residence at 6086 Belair Lake Road.  (Id.

at ¶ 17.)  No further information is provided about or by CI #2.  Despite investigation and

surveillance of 6086 Belair Lake Road throughout the remainder of 2001, DEA agents failed to

confirm that Demetrius Flenory was living at this address, and, while many vehicles were observed at the address, there is no information in the affidavit that a white van was ever seen at the residence.  (Aff. at 03926-27, ¶¶ 18-19.)  Further surveillance of the residence by the DEA was discontinued in late 2001 when it became apparent that no one was living at 6086 Belair Lake Road at that time.  (Aff. at 03927, ¶ 20.)

In March 1999, CI #3 identified a photograph of Demetrius Flenory and said that Flenory was seen multiple times with large amounts of cash and/or a handgun.  (Aff. at 03927-28, ¶ 23.)  CI #3 also said that Flenory had some association with Thelmon Stuckey, who was awaiting trial in Detroit for murdering a federal witness, that Flenory often used fictitious names (but CI #3 did not give any specific names), and that Flenory was aware that he was the subject of a DEA investigation and was concerned about it.  Id.  No further information is provided about or by CI #3.  In January 2002, CI #4 told DEA agents that Demetrius Flenory was a vengeful killer who threatened people, that he was seen in possession of various weapons, and that he deliberately avoided IRS cash reporting requirements.  (Aff. at 03928, ¶ 24.)  No further information is provided about or by CI #4.

In May 2003 CI #1 contacted DEA Atlanta to advise that Demetrius Flenory was back in Atlanta, that he was frequenting a specific club, that he was often with a group of individuals wearing "BMF" t-shirts, that "BMF" stood for "Black Mafia Family," and that Demetrius Flenory was one of the leaders of BMF.  (Id. at ¶ 25.)  It was also noted that CI #1 had in the past provided truthful and reliable information that led to the conviction of five (5) defendants.  Also in May 2003, CI #5 reported that Demetrius Flenory was calling himself "Reggie," was associated with 404 Motorsports, and was currently banned from an Atlanta club for an altercation there (not the

same club referenced by CI #1).  (Id. at ¶ 26.)  No further information is provided about or by CI #5.  In June 2003, CI #6 reported that a black male, name unknown to CI #6, who was associated with 404 Motorsports was living at 6086 Belair Lake Road and would be having a party on June 22, 2003.  (Id. at ¶ 27.)  In the early morning hours of June 23, 2003, DEA surveillance revealed that there did appear to be a party in progress at 6086 Belair Lake Road.  (Aff. at 03929, ¶ 28.)  Later on June 23, 2003, CI #7 met with DEA agents and reported that he had attended this party.  (Id. at ¶ 29.)  CI #7 identified a photograph of Demetrius Flenory as "Meechie," the host of the party and self-described owner of the house.  (Id.)  CI #7 also said that, at the party, he observed Demetrius Flenory smoking marijuana, provided a description of Demetrius Flenory, and said that he observed a handgun unattended in one of the bedrooms of the house.  (Id.)  No further information is provided about or by CI #7.

On June 24, 2003, DEA investigators learned that 6086 Belair Lake Road was quit-claimed to Tonesa Welch and that and that utility bills for 6086 Belair Lake Road were in the name of Melanie Dodson.  (Aff. at 03929, ¶ 31.)

The affiant reports that all of the aforementioned information (bringing attention to the CI information, especially the information from CI #7 that Demetrius Flenory was seen smoking marijuana) was provided in a previous application completed by a DEA agent for a DeKalb County search warrant, submitted on June 25, 2003, and that this application was denied.  (Aff. at 03929-30, ¶ 32.)  Since the denial of that application, continuing investigation revealed that Tonesa Welch was the long-term girlfriend of Demetrius' brother, Terry Flenory, who was suspected of drug trafficking, and that Welch did not live at 6086 Belair Lake Road.  (Aff. at 03930, ¶¶ 33-34.)  Continuing investigation also revealed that Melanie Dodson was identified in a

2002 DEA Detroit investigation in which the primary targets were Terry and Demetrius Flenory. (Id. at ¶ 35.)  Further, numerous vehicles were observed at 6086 Belair Lake Road in May through November 2003.  (Id. at ¶ 36.)

On November 14-16, 2003, APD officers reported to the DEA that Demetrius Flenory had been arrested on November 11, 2003, and had been charged with the murders of Anthony "Wolf" Jones and Lamont Girdy, who were shot outside Club Chaos in Atlanta in the early morning hours of November 11, 2003.  (Aff. at 03930-31, ¶ 37.)  Specifically, the affiant stated that "[a]lthough eyewitnesses at the scene of the shooting identified Flenory as the person who shot Jones and Girdy, Flenory was not arrested at the scene.  When Flenory was arrested, several hours later on 11-11-03, he was not in possession of any firearm, and he denied having any involvement in any shooting incident."  (Id.)

The search warrant for 6086 Belair Lake Road was issued on November 17, 2003, and was executed by DEA Task Force Group 2 later that day.  (See DEA-6 Bates Stamp Nos. 02867-02899, attached hereto as Exhibit 2.)  All evidence seized was inventoried on Form DEA-12 (Aff. at 03936-03941) and was placed into DEA custody.  (See DEA-6.)  Items seized included photographs, cell phones, assorted documents, assorted jewelry and items of clothing, various framed photographs of real-life and fictional gangsters, a framed photograph of Christopher Wallace (a now-deceased rap artist also known as "Notorious Big"), a compact disc entitled "Meech's Harem," firearms, and ammunition, among other items.

## II.   ARGUMENT

### A. The Search of 6086 Belair Lake Road was a Federal Search and, as Such, Must Meet the Standards for a Federal Search

Significant Federal involvement in a search will render such search to instead be a Federal search governed by the same standards as would be a Federal search, including Rule 41 of the Federal Rules of Criminal Procedure.  The United States Supreme Court addressed this question in Lustig v. United States, 338 U.S. 74, 79 (1949), cited by United States v. $22,287.00 in U.S. Currency, 520 F. Supp. 675 (E.D. Mich. 1981).  See also U.S. v. Townsend, 394 F.Supp. 736 (E.D. Mich. 1975) (even though State warrant was executed by State officers, fact that warrant was based solely on federal investigation rendered search a federal search)  In Lustig, the manager of a hotel and a local police officer both contacted a Secret Service agent to report possible counterfeiting.  Lustig, 338 U.S. at 75.  The Secret Service agent went to the room, looked through the keyhole, and saw no evidence of counterfeiting.  Id. at 76.  The Secret Service agent then spoke with the maid who had made the initial claim that illegal activities were transpiring in the room.  Id.  After speaking with the maid, the Secret Service agent called the local officer who had initially contacted him and said that, while he had seen no evidence of counterfeiting, he was confident that "something was going on."  Id.  Through additional investigation, the local officer determined that one of the men registered to the room was known to engage in gambling, and obtained a warrant for the arrest of the two men registered to the room, alleging that they had violated a local ordinance requiring criminals to register with the local police within 24 hours of their arrival in town.  Id.  The room was searched, and as a result of what was found, the local officer contacted the Secret Service agent, who then came to the room.  Id.  Some of the items

seized were immediately given to the Secret Service agent, and the remainder were eventually turned over to him.  Id.

In determining whether this was a Federal search, Justice Frankfurter, speaking for the Court, said that

> It surely can make no difference whether a state officer turns up the evidence and hands it over to a federal agent for his critical inspection with the view to its use in a federal prosecution, or the federal agent himself takes the articles out of a bag. It would trivialize law to base legal significance on such a differentiation. Had [the Secret Service agent] accompanied the city police to the hotel, his participation could not be open to question even though the door of Room 402 had not been opened by him.

Lustig, 338 U.D. at 78 (citations omitted).  Justice Frankfurter went on to say that "[t]he crux of that doctrine is that a search is a search by a federal official if he had a hand in it.…"  Id.  The Court thus deemed the search in Lustig to be a federal search.

This issue was addressed by the Eastern District of Michigan in United States v. $22,287.00 in U.S. Currency, supra.  This case involved a controlled buy of a controlled substance which led to an application for and execution of a search warrant.  U.S. v. $22,287.00, 520 F. Supp. at 676-77.  The underlying investigation was initiated by State officers, the warrant issued was a State warrant prepared by a State official on a State form signed by a State judge, the subject of the investigation was alleged to have violated State law, and the investigation was controlled by State officers until the execution of the warrant.  Id.  A Federal officer met with the local officers prior to execution of the warrant, participated in execution of the warrant, took control of the evidence seized, and transmitted the evidence to Federal agents for processing.  Id. at 677.  To determine the validity of the warrant, the Court needed to determine if the warrant executed was a State or a Federal warrant.  Id. at 678.  In reaching its decision, the court cited Lustig, supra, as

11

well as United States v. Searp, 586 F.2d 1117 (6th Cir. 1978) (search resulting from a joint

investigation between the Federal Bureau of Investigation ("FBI") and local officials was a federal

search).  In its opinion, the Eastern District of Michigan quoted Searp for the proposition that

> the temptation to federal officers to take advantage of more lenient or more flexible
> state procedures in the course of conducting a federal investigation is still a reality.
> While it is important not to stifle cooperation between federal and state officers, we
> think it clear that federal officers, investigating a federal crime, must comply with
> the federal rules governing their conduct…. when a federal officer has participated
> in a search in an official capacity, his or her conduct, and thus the legality of the
> search, is to be judged by federal standards.

U.S. v. $22,287.00, 520 F. Supp. at 679 (quoting Searp, 586 F.2d at 1121).  The court held that the

circumstances in the case at hand rendered the search warrant a federal warrant to be governed by

the provisions of Rule 41 of the Federal Rules of Criminal Procedure.  U.S. v. $22,287.00, 520 F.

Supp. at 679.  Further, upon determining that the warrant, as issued, did not comply with Rule 41,

the Court held that all evidence seized as a result of the execution of the warrant was to be

suppressed.  Id.

The execution of the search warrant at 6086 Belair Lake Road on November 17, 2003, was

a Federal search to be governed by Rule 41 of the Federal Rules of Criminal Procedure.  TFA

Koerts, who completed the affidavit and application for the search warrant is to be considered a

Federal agent because of his long-term assignment to a DEA Task Force.  See United States v.

Jones, 471 F.3d 868, 871-72 (8th Cir. 2006).  Most, if not all, of the information contained in the

affidavit in support of the search warrant was obtained as the result of Federal investigations.  The

search was conducted by a DEA Task Force.  All evidence seized was inventoried on DEA forms

and turned over to DEA custody.  Finally, no State charges arose out of this search.  Significant

Federal involvement in a search will render it a Federal search.  See Lustig, discussed supra, and

U.S. v. $22,287.00, discussed supra.  The significant Federal involvement in the search of 6086 Belair Lake Road thus necessitates the conclusion that the search of 6086 Belair Lake Road was a Federal search to be governed by Rule 41 of the Federal Rules of Criminal Procedure.

> **B. Misstatements in and Omissions from the Affidavit Supporting the Search in This Case Were Made Deliberately or with Reckless Disregard for the Truth and Should be Stricken from the Affidavit; Without These Misstatements and/or with the Omitted Information, Probable Cause Would Not Exist for the Search, Thus Necessitating the Suppression of All Evidence Obtained as a Result of this Search**

False statements in or omissions from an affidavit supporting a search warrant application may invalidate the search warrant.  Franks v. Delaware, 438 U.S. 154 (1978); United States v. Charles, 138 F.3d 257 (6th Cir. 1998).  For a search warrant to be invalidated and evidence to be suppressed based upon an allegation that the affidavit underlying the warrant contained misstatements or omitted information, the defendant must prove (1) that the misstatement or omission was made either deliberately or with reckless disregard for the truth and (2) that the affidavit without the misstatements or with the omitted information would not have provided probable cause for issuance of warrant.  Charles, 138 F.3d at 263-64.

In the affidavit supporting the search warrant for 6086 Belair Lake Road, TFA Koerts stated that on November 14-16, 2003, APD officers reported to the DEA that Demetrius Flenory had been arrested on November 11, 2003, and had been charged with the murders of Anthony "Wolf" Jones and Lamont Girdy, who were shot outside Club Chaos in Atlanta in the early morning hours of November 11, 2003.  In describing the events surrounding the shooting and the arrest of Demetrius Flenory, TFA Koerts said that "[a]lthough eyewitnesses at the scene of the shooting identified Flenory as the person who shot Jones and Girdy, Flenory was not arrested at the scene.  When Flenory was arrested, several hours later on 11-11-03, he was not in possession

of any firearm, and he denied having any involvement in any shooting incident." This quote contains a misstatement and omits important information. As for the misstatement, there were not "witnesses" who identified Flenory as the shooter at Club Chaos. There was instead one witness whose testimony was then and remains to this day uncorroborated. As for the omissions, first this description omits the facts that led to the shooting that evening. Jones had, prior to the shooting, been removed from Club Chaos after he was involved in a confrontation in the club with a woman unrelated to Demetrius Flenory. Girdy left with Jones. Later that evening, when the club closed and patrons were leaving, Girdy and Jones were waiting outside, each armed with a handgun. Witnesses later told police that both Jones and Girdy were seen firing their weapons. The description by Koerts also omits the important fact that the reason that Demetrius was not arrested at the scene was that he was shot in the buttocks and was taken to the hospital by friends who had been in the club with him.

These facts place the events surrounding the Club Chaos shooting in a completely different light. Given the ambiguity of TFA Koerts' description of this confrontation, especially as to why Demetrius Flenory could not have been arrested at the scene, the statements made by TFA Koerts appear to be deliberate misstatements and omissions of known facts, and are, at the least, statements made in reckless disregard of the truth.

As is recited by TFA Koerts in the affidavit, the majority of the information in his affidavit had previously been presented to a magistrate who had declined to issue a warrant based upon that information. The paragraph discussing Demetrius Flenory's charges resulting from the shooting at Club Chaos is the only significant information added to the affidavit in this second attempt at securing a warrant to search 6086 Belair Lake Road. Therefore, without the misstatements and

with the omitted information, this affidavit (as was true the first time it was submitted) would not have provided probable cause for the issuance of a warrant to search 6086 Belair Lake Road.  For this reason, pursuant to <u>Franks v. Delaware</u>, all evidence seized as a result of this search should be suppressed.

      **C.  The Affidavit Supporting the Search Warrant for the Search of 6086 Belair Lake Road Impermissibly Relies on Information Provided by Confidential Informants, Providing No Information as to the Reliability or Veracity of the Confidential Informants, No Information as to the Source of Their Information, and No Significant Corroboration; in Light of this, No Substantial Basis Exists for the Issuance of this Search Warrant, and All Evidence Seized as a Result Thereof Should be Suppressed**

When probable cause for issuance of a search warrant is based upon information provided by a confidential source, there must be evidence that given the "totality-of-the-circumstances," there is a fair probability that contraband or evidence of a crime will be found as a result of the search.  <u>Illinois v. Gates</u>, 462 U.S. 213, 239 (1983).  In assessing the information provided by the confidential source, courts are to consider such factors as the confidential source's veracity, reliability, and basis of knowledge.  <u>Id.</u>  The Court described this standard as being in line with the "traditional" standard for reviewing a probable cause determination—that the magistrate must have a "substantial basis for concluding that a search would uncover evidence of wrongdoing.  <u>Id.</u> at 236 (internal quotation marks and citation omitted).  The Court also explained that this substantial basis must exist and that a magistrate could not, for example, issue a warrant based upon wholly conclusory statements with no independent verification, such as "'affiants have received reliable information from a credible person and believe' that contraband or evidence of a crime would be found at a certain location."  <u>Gates</u>, 462 U.S. at 239 (quoting <u>Nathanson v. United States</u>, 290 U.S. 41 (1933)).  In <u>Gates</u>, a local police force in Illinois had received an anonymous

letter which stated that a local couple was engaged in selling drugs.  <u>Gates</u>, 462 U.S. at 224-27.

The letter described the methods of travel used by the couple to obtain drugs from Florida (a

combination of flying and driving), when the couple would be taking their next trip, and where the

couple stored the drugs.  <u>Id.</u>  Through investigation and surveillance, the police confirmed the

majority of the details in the letter.  <u>Id.</u>  After the travel scenario described in the letter was

confirmed, the local Illinois officer applied for and was granted a warrant to search the couple's

car and home.  <u>Id.</u>  When the couple later challenged the warrant because of the involvement of a

confidential source, the Court, applying the totality-of-the-circumstances test described above,

held that the corroboration of the couple's travel methods and plans as described in the letter from

the confidential source, focusing especially the corroboration of <u>future</u> actions to be taken by the

couple, was sufficient to allow a judge to find there was probable cause for the search.  <u>Gates</u>, 462

U.S. at 245-46.

  This "totality-of-the-circumstances" test was discussed by the Sixth Circuit <u>United States</u>

<u>v. Johnson</u>, 351 F.3d 254 (6th Cir. 2003).  Johnson was suspected of selling drugs.  <u>Johnson</u>, 351

F.3d 256-57.  The state police were conducting surveillance of Johnson's half-sister with whom he

lived part-time.  <u>Id.</u>  Based upon surveillance of the residence which seemed to indicated drug

activity—numerous short-term visitors, some of whom were known to have records for drug

offense—and upon information from a confidential informant who had provided reliable

information in prior drug prosecutions, who was seen visiting the residence, and who told police

that he witnessed drug activity at the residence, the state police applied for and were granted a

warrant to search the premises.  <u>Id.</u>  The affidavit in support of this warrant detailed the

investigation described above and described the confidential informant as a "proven credible and

16

reliable source of information" and later as a "creditable source of information who has proven reliable in the past and by facts contained in this affidavit. This informant has conducted at least four (4) controlled purchases of narcotics for your affiant which all have led to successful discovery." Id., 351 F.3d at 258. Crack cocaine was discovered during the search of the residence. Id. Johnson argued that this search warrant was defective for its reliance on information provided by a confidential source. Id. In addressing the sufficiency of the warrant, applied the "totality-of-the-circumstances" test as set out in Gates. Id. The Court focused on the requirement that an affidavit provide indicia of reliability for information provided by a confidential source. Id., 351 F.3d at 259. Based upon the corroboration of the confidential source's statements through police surveillance and upon the statements regarding the proven record for the confidential source as stated in the affidavit, the Sixth Circuit held that the "totality-of-the-circumstances" test was satisfied and that the magistrate could have found a substantial basis upon which to approve the application for a search warrant.

The affidavit supporting the search warrant for 6086 Belair Lake Road relies on information provided by seven (7) confidential informants. CI #1 is the only one for whom any statement is made as to the informant's reliability and veracity, and who is said to have provided reliable information in the past, and this statement appears to be related to the 2003 statement regarding the fact that Demetrius Flenory had returned to Atlanta and that he was associated with a group called "BMF." The statement from 1998 in which CI #1 claimed that Demetrius Flenory was involved in a 1997 murder was never corroborated despite "intensive follow-up investigation" by APD and DEA.

No statements were made as to the veracity or reliability of CIs 2 through 7, and it was not claimed that CIs 2 through 7 had previously provided information that led to convictions. Therefore, the only way in which the information provided by these CIs could possibly be such that the information provided by them could provide sufficient basis for issuance of a warrant is if the information they provided was corroborated. However, the only information provided by these CIs that could even be argued to have been corroborated would be information which could be gained without any special knowledge or relationship to Demetrius Flenory, such as clubs he frequents, how he dresses, hoe he wears his hair, and what tattoos he has.

Despite months of surveillance after CI #2's statement, there is no mention in the affidavit that CI #2's assertions that Demetrius Flenory lived at 6086 Belair Lake Road and owned a white van were ever corroborated by a sighting of either at the residence. The affidavit provides no corroboration of CI #3's assertions that Demetrius Flenory sometimes carried a handgun and sometimes carried large amounts of cash and that Demetrius was somehow related to an individual awaiting trial in Detroit. No corroborating evidence was provided in the affidavit as to CI #4's claims that Demetrius was a vengeful killer who threatened people and that he deliberately circumvented IRS cash transaction reporting requirements. CI #5's assertions that Demetrius Flenory was somehow associated with 404 Motorsports, that he was using the nickname "Reggie," and that Demetrius Flenory was banned from an Atlanta area club were not corroborated in the affidavit. CI #6 asserted only that someone associated with 404 Motorsports lived at 6086 Belair Lake Road and that this person was having a party at that residence on June 22, 2003, but the affidavit made no showing that CI #6 was able to identify Demetrius Flenory as this someone.

The remaining statements by CI #7 were not so particular as to evidence any special knowledge or access on the part of CI #7 to provide support for CI #7's statements.

The affiant did not even attempt to vouch for the veracity and credibility of six (6) of the seven (7) CIs who provided information that was included in the affidavit to support the search of 6086 Belair Lake Road.  Further, the affidavit contained no information corroborating any of the information provided by any of the CIs.  Thus, looking at the "totality-of-the-circumstances," the statements of the CIs cannot be said to provide a substantial basis upon which a warrant could be issued, and, therefore, all items seized as a result of the search warrant executed at 6086 Belair Lake Road should be suppressed pursuant to Illinois v. Gates, supra.

### D. Items Seized During the Execution of the Search Warrant at 6086 Belair Lake Road Exceeded the Scope of the Search Warrant, Necessitating the Suppression of these Items

It is well established, as is stated above, that the Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing… the persons or things to be seized."  U.S. Const., Am. IV  (emphasis added).  The particularity requirement essentially serves two functions: first, there is a threshold level of particularity with which a warrant must describe persons or things to be seized to even be valid under the Fourth Amendment, as is discussed, supra; second, once a valid warrant has been issued and is to be executed, the search is then limited to only those items named in the warrant (and supporting documentation, if referenced properly in the warrant).

Items seized which go beyond the scope of the warrant and which do not fit into an exception, such the "plain view" exception, are to be suppressed.  Brindley v. Best, 192 F.3d 525, 533 (6th Cir. 1999).  In Brindley v. Best, various owners of pawn shops and secondhand jewelers

19

brought actions against law enforcement agencies alleging unlawful seizure of items.  Brindley, 192 F.3d at 528-29.  In one instance, search warrants were issued for both the business owners' business and for their residence. Id., 192 F.3d at 533.  The search warrant for their residence authorized only the seizure of records related to homeowners' pawn shop business.  Id.  During the search of the residence, officers seized various personal items such as family photographs, home videos, and artwork.  Id.  The court held that the seizure of these personal items clearly exceeded scope of the search warrant because no reasonable officer could have believed these items to be within the scope of the search warrant.  Id.

In United States v. Robertson, 21 F.3d 1030 (10th Cir. 1994), the Tenth Circuit addressed a case the facts of which are easily analogized to those of the case at hand.  In Robertson, an individual had been carjacked, and, since he was in the process of moving, a number of items were in his car when it was stolen.  Robertson, 21 F.3d at 1032.  When the vehicle was located in an apartment complex parking lot, it was empty.  Id.  Further investigation led the police to an apartment in the complex where Robertson was living.  Id.  An agent interviewed Robertson (who gave a false name at the time) in the apartment and observed a few items that fit the description of some of the items that were in the vehicle when it was stolen.  Id.  Officers then obtained a warrant to search the apartment for the specific items that the agent had seen as well as "other instrumentalities and fruits of the crime of armed carjacking."  Id.  In executing the warrant, officers seized items identified by the carjacking victim as his property as well as a firearm, ammunition, traffic tickets issued to a third party, and photographs of "Robertson and others displaying gang signals and signs."  Id.

20

Robertson challenged the search warrant itself, arguing that it was too general in its description of items to be seized, and Robertson also argued that the items seized by the officers exceeded the scope of the warrant. Robertson, 21 F.3d at 1032. The court held that the warrant itself was not too general because it was limited to items—specifically "instrumentalities" and "fruits"—related to a specific crime—carjacking. Id., 21 F.3d at 1033-34. The court then identified three items seized which were outside the scope of the search warrant, being neither "instrumentalities" nor "fruits" of the crime of armed carjacking: the ammunition, the traffic tickets issued to a third party, and the photographs of Robertson and others displaying gang symbols and signs. Id., 21 F.3d at 1035. The court held that the ammunition would not be suppressed because it could lawfully be seized under the "plain view" exception to the search warrant requirement since "its 'incriminating character' was 'immediately apparent.'" Id., 21 F.3d at 1035 (citing Horton v. California, 496 U.S. 128, 136 (1990), and Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971)). The court did rule, however, that the remaining two seized items in question, the tickets and the photographs, were to be suppressed because they were neither "fruits" or "instrumentalities" of the crime nor were they items whose incriminating character was immediately apparent, so the officer did not have probable cause to seize these items even if they were in plain view. Robertson, 21 F.3d at 1035.

The text of the search warrant for 6086 Belair Lake Road provided that drug records, drug proceeds, and firearms (further described in Attachment B) were to be seized under this search warrant. Attachment B added jewelry and photographs (in particular of co-conspirators, assets,

and/or controlled dangerous substances).[1]  As to "jewelry," this term does not have sufficient

particularity to satisfy the Fourth Amendment.  Jewelry also would not fit into the "plain view"

exception because jewelry does not have "an incriminating character [which is] immediately

apparent.  Robertson, 21 F.3d at 1035 (internal quotation marks and citations omitted).  Therefore,

all jewelry seized from 6086 Belair Lake Road should be suppressed.

Several of the photographs seized, those of real or fictional gangsters as well as rap artists,

also exceed the scope of the warrant.  These items do not fit within the description of photographs

to be seized, and no reasonable officer could have believed that these were within the scope of the

search warrant.  Therefore, these photographs should, like the artwork in Brindley, supra, be

suppressed.

Finally, in the execution of the search warrant at 6086 Belair Lake Road, various items of

clothing were seized.  Such items do not in any way fit into any of the categories of items set out

in the warrant and the accompanying Schedule B, and no reasonable officer could have believed

that these were within the scope of the search warrant.  Any argument that these items showed

some sort of gang affiliation could be countered with reference to Robertson, supra, pursuant to

which all items of clothing seized from 6086 Belair Lake Road should be suppressed.

## III.    CONCLUSION

The evidence seized during the November 17, 2003, should be suppressed.  This search

was a Federal search because of the extensive involvement of Federal officers in every stage of the

preparation for, execution of, and analysis following this search, and should therefore be governed

---

[1] For purposes of this Motion to Suppress and Supporting Brief, only the items listed on Schedule B which seemed to correspond to items the government seeks to admit per its October 1, 2007, Exhibit List are addressed.

by the same laws and rules as would any other federal search.  The affidavit in this case suffered from misstatements and omissions, which if removed or added, respectively, would result in a finding of no probable cause for the search.  The information provided by CIs in this case did not meet the "totality-of-the-circumstances" test for veracity and reliability.  For these reasons, all items seized as a result of the search of 6086 Belair Lake Road should be suppressed.  Finally, even if the search warrant were valid, several items seized exceeded the scope of the warrant and should be suppressed.

Respectfully submitted,

_s/Drew Findling_____
Drew Findling
The Findling Law Firm
3490 Piedmont Road NE, Suite 600
Atlanta, GA 30305
(404) 460-4500
drew@findlinglawfirm.com

Dated:  October 12, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Michael C. Liebson, Assistant United States Attorney; Dawn N. Ison, Assistant United States Attorney; and Julie A. Beck, Assistant United States Attorney, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: *none*.

   s/Drew Findling         
The Findling Law Firm
3490 Piedmont Road NE, Suite 600
Atlanta, Georgia 30305
(404) 460-4500
drew@findlinglawfirm.com