UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,  )
Plaintiff,  )
 )      CRIMINAL NO. 05-80955
v.  )      HON. AVERN COHN
 )
D-2  DEMETRIUS EDWARD FLENORY,  )
Defendant.  )
_____  )

_____/

MICHAEL C. LIEBSON (P24092)          JULIE A. BECK (P53291)
Assistant United States Attorney     Assistant United States Attorney

DAWN N. ISON (P43111)
Assistant United States Attorney


JAMES L. FEINBERG (P13341)           DREW FINDLING
James L. Feinberg & Associates       ALIXE E. STEINMETZ
Attorney for Defendant               Attorneys for Defendant
535 Griswold, 2632 Buhl Building     The Findling Law Firm
Detroit, Michigan                    3490 Piedmont Road NE, Suite 600
(313) 962-8280                       Atlanta, Georgia 30305
                                     (404) 460-4500

_____/

## <u>DEFENDANT DEMETRIUS FLENORY'S MOTION TO SUPPRESS EVIDENCE ARISING FROM THE UNLAWFUL SEARCH OF  THE RESIDENCE LOCATED AT 5173 BRANDYWINE DRIVE, FRISCO, COLLIN COUNTY, TEXAS, AND MEMORANDUM IN SUPPORT</u>

NOW COMES Defendant, DEMETRIUS EDWARD FLENORY by and through counsel,

James L. Feinberg, Drew Findling, and Alixe E. Steinmetz, and moves to suppress all unlawfully

seized evidence obtained as a result of the October 20, 2005, search of 5173 Brandywine Drive,

1

Frisco, Collin County, Texas, and in support thereof, represents the following to this Honorable Court:

1.      On October 19, 2005, the United States Marshals Service ("USMS"), with the assistance of a deputy or deputies of the Collin County Sheriff's Office, applied for and was granted a Collin County Search Warrant for the body of Demetrius Flenory.[1]

2.      The Collin County Search Warrant for the Body of Demetrius Flenory was executed at 10:00 a.m. on October 20, 2005.

3.      At 11:05 a.m., USMS Senior Special Agent ("S/A") James Ergas contacted Sergeant Andrew Hawkes, a criminal investigator with the Special Operations Unit of the Collin County Sheriff's Office, and requested Hawkes' assistance in obtaining a search warrant for 5173 Brandywine.

4.      Sergeant Hawkes then applied for a Collin County search warrant for 5173 Brandywine, the affidavit for which appears to be based entirely upon information provided by USMS Senior S/A Ergas.

5.      In the search warrant application completed by Sergeant Hawkes, he alleged that the following specific criminal offenses had been committed: Possession of Marijuana and Marijuana Paraphernalia.

6.      In the search warrant application completed by Sergeant Hawkes, the following items were listed as items to be seized: "marijuana and marijuana paraphernalia, firearms,

---

[1] It should be noted that counsel for the Defendant has only been provided with the Search Warrant for this search and so has not been able to review the application for this warrant and supporting affidavit(s) or other supporting document(s) to ascertain the validity thereof.

computers, cellular telephones and currency gained in or used in the comission [sic] of delivery and possession of marijuana."

7.     The search warrant was issued that same day, October 20, 2005, and was executed later that same day by Sergeant Hawkes and Drug Enforcement Administration ("DEA") Dallas Task Force Group 1.

8.     The items seized from 5173 Brandywine were inventoried on DEA evidence sheets.  All drugs seized during the execution of this warrant were immediately turned over to a DEA Dallas Task Force Agent and a DEA Detroit S/A.  All weapons were turned over to an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  All other nondrug evidence seized was turned over to DEA Detroit.

9.     This Defendant has not been provided with a Return for the search warrant executed at 5173 Brandywine.

10.     Demetrius Flenory could not have been a fugitive from justice in Fulton County, Georgia, because at that time he was on bond in that county.  Therefore, the USMS did not have jurisdiction to seek a fugitive warrant for the body of Demetrius Flenory.  Without this warrant, officers from the Collin County, Texas, Sheriff's Office and USMS would not have been inside 5173 Brandywine so as to see marijuana in "plain view."  Without this, there would not have been probable cause for a Texas State warrant to search 5173 Brandywine.  Therefore, the search of 5173 Brandywine was conducted without probable cause in violation of the Fourth Amendment to the United States Constitution, and all items seized as a result of this search should be suppressed.

11.     Due to the extensive involvement of Federal agents throughout the investigation, application for warrant, search, and subsequent handling of property, this search was a Federal

search pursuant to <u>Lustig v. United States</u>, 338 U.S. 74, 79 (1949), and <u>United States v. $22,287.00 in U.S. Currency</u>, 520 F. Supp. 675 (E.D. Mich. 1981), and was therefore subject to the requirements applicable to a Federal search.

12.     The Affidavit submitted in support of the search warrant executed at 5173 Brandywine contains misstatements which were made either deliberately or with reckless disregard for the truth.  Further, information has been omitted from this Affidavit either deliberately or with reckless disregard for the truth.  Without such misstatements and/or with the omitted information, probable cause would not have existed for the search.  For this reason, all evidence obtained as a result of this search should be suppressed pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

13.     In executing the search warrant at 5173 Brandywine, agents seized items which were beyond the scope of the search warrant and which did not fall within the "plain view" exception.  These items should be suppressed pursuant to <u>Brindley v. Best</u>, 192 F.3d 525, 533 (6th Cir. 1999).

14.     As such, this Court should hold that the search of 5173 Brandywine was conducted in violation of the Fourth Amendment and should suppress all evidence seized as a result of this search.

15.     In the alternative, this Court should suppress the items seized that exceeded the scope of the search warrant.

16.     The Defendant presents this motion at this time because it was not until September 28, 2007, that the Defendant was provided with the October 14, 2005, Fulton County arrest warrants for Demetrius Flenory, the October 19, 2005, warrant for the body of Demetrius Flenory,

and the October 20, 2005, search warrant and related documents for the search of 5173 Brandywine.  The Defendant has still not been provided with the affidavit and application for the October 19, 2005, warrant for the body of Demetrius Flenory obtained in Collin County, Texas, at the request of the USMS.

17.     Further, the large number of searches and large amounts of evidence seized at each search would have proven unmanageable to address before knowing which exhibits the Government intends to introduce, and the Defendant was not provided with the Government's Exhibit List until October 1, 2007.

18.     The Government does not concur in the relief requested.

WHEREFORE, this Defendant, DEMETRIUS EDWARD FLENORY, respectfully requests this Honorable Court to conduct an evidentiary hearing and to enter an Order suppressing the evidence seized from 5173 Brandywine on October 20, 2005.

## BRIEF IN SUPPORT

### I.     FACTS

Demetrius Edward Flenory is charged in Counts One, Three, Four, Ten, Twelve, and Thirteen in the Thirteen-Count Indictment in this case.  The respective charges are as follows: Conspiracy to Distribute 5 Kilograms or More of Cocaine, Continuing Criminal Enterprise, Possession with Intent to Distribute More Than 500 Grams of Cocaine, Conspiracy to Launder Monetary Instruments, and two counts of Possession with Intent to Distribute More Than 5 Kilograms of Cocaine.  On October 1, 2007, the United States Attorney's Office provided counsel for Defendant Demetrius Flenory an Exhibit List which included items seized as a result of the October 20, 2005, search of a residence located at 5173 Brandywine, Frisco, Collin County, Texas.

On October 14, 2005, Investigator Walter L. Britt of the Atlanta, Georgia, Police Department, submitted affidavits and obtained four (4) Fulton County, Georgia, warrants for the arrest of Demetrius Flenory for items found during the November 23, 2004, search of a residence located at 4363 Paran Place, Atlanta, Georgia.  (These warrants are attached hereto as Exhibit 1.) At 6:25 p.m. on October 19, 2005, a Collin County, Texas, warrant was obtained for the body of Demetrius Flenory at the request of the United States Marshal's Service ("USMS").[2]  (This warrant is attached hereto as Exhibit 2.)  The USMS was looking for Demetrius Flenory because he had been deemed a fugitive from justice for failing to answer to the Fulton County warrants.

---

[2] At this time, this Defendant has not been provided with the Affidavit in support of this warrant, so it is unknown to this Defendant who precisely obtained the warrant and what was stated in the supporting affidavit.  The signature of the Affiant looks like it may have been the signature of USMS Special Agent James Ergas.

The warrant for the body of Demetrius Flenory was executed at 5173 Brandywine at approximately 10:00 a.m. on October 20, 2005.  (Search Warrant for 5173 Brandywine and supporting affidavit, discussed further <u>infra</u>, and attached hereto as Exhibit 3.)  During a protective sweep of the residence at the time of the arrest of Demetrius Flenory, marijuana was seen in plain view.  (<u>Id.</u>)  At approximately 11:05 a.m., USMS Special Agent ("S/A") James Ergas contacted Sergeant Andrew Hawkes of the Collins County, Texas, Sheriff's Office ("CCSO") and "requested assistance."  (<u>Id.</u>)  According to the affidavit completed by Sergeant Hawkes, Demetrius Flenory was sought for "outstanding federal warrants of possession of marijuana with intent to distribute and possession of controlled substance, namely cocaine, with intent to distribute."  (<u>Id.</u>)  In this affidavit, Sergeant Hawkes stated a belief that inside 5173 Brandywine would be found evidence of possession of marijuana and marijuana paraphernalia had been committed.  (<u>Id.</u>)  Sergeant Hawkes described this evidence as "marijuana and marijuana paraphernalia, firearms, computers, cellular telephones and currency gained in or used in the commission of delivery and possession of marijuana."  (<u>Id.</u>)  Sergeant Hawkes' affidavit for the search of 5173 Brandywine was based entirely on the following information provided to him by S/A Ergas: a search warrant for the body of Demetrius Flenory was executed earlier that day for outstanding federal charges, marijuana and firearms were found during a protective sweep related to the warrant for the body of Demetrius Flenory, "Flenory is a drug trafficker known by the Drug Enforcement Administration," and prior USMS and CCSO surveillance revealed Demetrius Flenory smoking marijuana in his back yard.  (<u>Id.</u>)

At 12:30 p.m. on October 20, 2005, Sergeant Hawkes' application for a search warrant was granted.  (SW for 5173 Brandywine.)  The residence was searched by Sergeant Hawkes of the

Collin County, Texas, Sheriff's Office and officers from DEA Dallas, Texas Task Force 1.  (DEA-6 Re: Arrest of Demetrius Flenory and Execution of Texas State Search Warrant at 5173 Brandywine, Bates Nos. 02990-02997, attached hereto as Exhibit 4.)  Items seized during this search included marijuana, documents, business cards, receipts, jewelry, disposable cameras, U.S. currency, three (3) vehicles, and three (3) firearms.  (Id.)  All drugs seized during the execution of this warrant were immediately turned over to a DEA Dallas Task Force Agent and a DEA Detroit S/A.  (Id.)  All weapons were turned over to an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  (Id.)  All other nondrug evidence seized was turned over to DEA Detroit.  (Id.)

One of the Federal officers present at the execution of the search warrant was Special Agent ("S/A") Joel Sheppard, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), who was then assigned to the USMS Southeast Regional Fugitive Task Force, which is based in Atlanta, Georgia.  (Id.  See also E.D. Texas Criminal Complaint as to Demetrius Flenory, attached hereto as Exhibit 5.)  On October 20, 2005, after the search was completed, S/A Sheppard contacted Joseph A. Patterson, a Senior S/A with ATF, who was assigned to the Dallas III/Plano Satellite Field Office to advise Patterson of Demetrius Flenory's arrest and of the fact that weapons were found during the subsequent search of 5173 Brandywine.  (E.D. Texas Criminal Compl.)  That same day, Senior S/A Patterson investigated Demetrius Flenory's criminal history, found that Demetrius Flenory was convicted of Carrying a Concealed Weapon, a felony, in 1991, and completed a Criminal Complaint for Demetrius Flenory for Felon in Possession of a Firearm. (Id.)  Demetrius Flenory was indicted on this charge in the Eastern District of Texas on November 1, 2005.  (E.D. Texas Indictment attached hereto as Exhibit 6.)

## II.     ARGUMENT

### A. Demetrius Flenory Could Not Have Been a "Fugitive from Justice;" Therefore, There was No Probable Cause for the Underlying Warrant for the Body of Demetrius Flenory; if that Warrant had not Been Issued, Officers Would not have Entered 5173 Brandywine, and Would Not have Been a Position to See the Items Claimed to have been in "Plain Sight;" Thus there Would have been No Evidence Providing Probable Cause for a Search Warrant for 5173 Brandywine as Required Under the Fourth Amendment to the United States Constitution

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Am. IV. The Sixth Circuit has stated that "[t]he point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." United States v. Gaston, 16 Fed. Appx. 375, 2001 WL 873744, 3 (6th Cir. 2001) (unpublished) (Attached hereto as Exhibit 7.). The Court explained further that

> [i]t is not enough that the police officer have probable cause to believe that the things to be seized may be found in the premises to be searched, or that the police officer present to the magistrate a conclusory statement that probable cause exists; the officer must present to a neutral magistrate sufficient facts to permit the magistrate to make his own independent judgment that there is probable cause.

Id.

In the case at hand, officers from the United States Marshals Service ("USMS") appear to have claimed that Demetrius Flenory was a "fugitive from justice" for his failure to answer for

four felony warrants from Fulton County, Georgia.  (E.D. Texas Compl.)  These Fulton County

warrants were issued five (5) days prior to the application for a Collin County, Texas, warrant for

the body of Demetrius Flenory.  It is preposterous to say that Fulton County officers were unable

to locate Flenory to serve these warrants.  At the time of the issuance of these warrants, Demetrius

Flenory was on bond on other charges in Fulton County.  Demetrius Flenory was arrested on those

charges on November 11, 2003, and was initially granted bond on December 1, 2003.  Conditions

of bond included that Demetrius Flenory wear an ankle monitor and maintain a curfew of 6:00

p.m. to 6:00 a.m.  Demetrius Flenory posted bond shortly thereafter.  After over five (5) months of

complying with these strict conditions and no apparent progress made by the State of Georgia

towards prosecuting this case, in May 2004, a Georgia Superior Court Judge agreed to relax the

conditions of Demetrius Flenory's bond.  Demetrius was still in compliance with his bond from

Fulton County on October 19, 2005, the date upon which USMS officers claimed he was a

fugitive from justice and obtained a Texas State warrant for his arrest.

Since Demetrius Flenory was on bond from Fulton County, Georgia, it makes no sense to

say that he could be a fugitive from justice on charges from the same jurisdiction.  Without this

patently false claim that Demetrius Flenory was a fugitive from justice in Fulton County, Georgia,

the USMS Fugitive Task Force, through the Collin County, Texas, Sheriff's Office, could not

have obtained a warrant for "the body of Demetrius Flenory."[3] If a warrant was not obtained for

"the body of Demetrius Flenory," officers would not have been authorized to enter the residence

located at 5173 Brandywine and so would not have been positioned so as to see marijuana in

---

[3] The Defendant is unable at this time to give more details regarding the process through which
Demetrius Flenory was determined to be a fugitive or regarding the issuance of the warrant for
"the body of Demetrius Flenory" because, to date, the Defendant has not been provided with any
of the documentation supporting either of these.

"plain view."  Without having seen this marijuana in "plain view," there would have been no

grounds to issue a Texas State search warrant for 5173 Brandywine.

Since the underlying fugitive warrant was invalid, the resulting entry and search of the

residence located at 5173 Brandywine were illegal.  Therefore, the search of 5173 Brandywine

was an illegal search conducted in violation of the Fourth Amendment, and all evidence seized as

a result of that search should be suppressed.

### B. The Search of 4363 Paran Place was a Federal Search and, as Such, Must Meet the Standards for a Federal Search

Significant Federal involvement in a search which purports to be a State search, and thus

only governed by the Fourth Amendment and relevant State provisions, will render such search to

instead be a Federal search governed by Rule 41 of the Federal Rules of Criminal Procedure.  The

United States Supreme Court addressed this question in Lustig v. United States, 338 U.S. 74, 79

(1949), cited by United States v. $22,287.00 in U.S. Currency, 520 F. Supp. 675 (E.D. Mich.

1981).  In Lustig, the manager of a hotel and a local police officer both contacted a Secret Service

agent to report possible counterfeiting.  Lustig, 338 U.S. at 75.  The Secret Service agent went to

the room, looked through the keyhole, and saw no evidence of counterfeiting.  Id. at 76.  The

Secret Service agent then spoke with the maid who had made the initial claim that illegal activities

were transpiring in the room.  Id.  After speaking with the maid, the Secret Service agent called

the local officer who had initially contacted him and said that, while he had seen no evidence of

counterfeiting, he was confident that "something was going on."  Id.  Through additional

investigation, the local officer determined that one of the men registered to the room was known to

engage in gambling, and obtained a warrant for the arrest of the two men registered to the room,

11

alleging that they had violated a local ordinance requiring criminals to register with the local

police within 24 hours of their arrival in town.  Id.  The room was searched, and as a result of what

was found, the local officer contacted the Secret Service agent, who then came to the room.  Id.

Some of the items seized were immediately given to the Secret Service agent, and the remainder

were eventually turned over to him.  Id.

In determining whether this was a Federal search, Justice Frankfurter, speaking for the

Court, said that

> It surely can make no difference whether a state officer turns up the evidence and
> hands it over to a federal agent for his critical inspection with the view to its use in
> a federal prosecution, or the federal agent himself takes the articles out of a bag. It
> would trivialize law to base legal significance on such a differentiation. Had [the
> Secret Service agent] accompanied the city police to the hotel, his participation
> could not be open to question even though the door of Room 402 had not been
> opened by him.

Lustig, 338 U.D. at 78 (citations omitted).  Justice Frankfurter went on to say that "[t]he crux of

that doctrine is that a search is a search by a federal official if he had a hand in it...."  Id.  The

Court thus deemed the search in Lustig to be a federal search.

This issue was addressed by the Eastern District of Michigan in United States v.

$22,287.00 in U.S. Currency, supra.  This case involved a controlled buy of a controlled substance

which led to an application for and execution of a search warrant.  U.S. v. $22,287.00, 520 F.

Supp. at 676-77.  The underlying investigation was initiated by State officers, the warrant issued

was a State warrant prepared by a State official on a State form signed by a State judge, the subject

of the investigation was alleged to have violated State law, and the investigation was controlled by

State officers until the execution of the warrant.  Id.  However, a Federal officer met with the local

officers prior to execution of the warrant, participated in execution of the warrant, took control of

the evidence seized, and transmitted the evidence to Federal agents for processing.  Id. at 677.  To

determine the validity of the warrant, the Court needed to determine if the warrant executed was a

State or a Federal warrant.  Id. at 678.  In reaching its decision, the court cited Lustig, supra, as

well as United States v. Searp, 586 F.2d 1117 (6th Cir. 1978) (search resulting from a joint

investigation between the Federal Bureau of Investigation ("FBI") and local officials was a federal

search).  In its opinion, the Eastern District of Michigan quoted Searp for the proposition that

> the temptation to federal officers to take advantage of more lenient or more flexible
> state procedures in the course of conducting a federal investigation is still a reality.
> While it is important not to stifle cooperation between federal and state officers, we
> think it clear that federal officers, investigating a federal crime, must comply with
> the federal rules governing their conduct…. when a federal officer has participated
> in a search in an official capacity, his or her conduct, and thus the legality of the
> search, is to be judged by federal standards.

U.S. v. $22,287.00, 520 F. Supp. at 679 (quoting Searp, 586 F.2d at 1121).  The court held that the

circumstances in the case at hand rendered the search warrant a federal warrant to be governed by

the provisions of Rule 41 of the Federal Rules of Criminal Procedure.  U.S. v. $22,287.00, 520 F.

Supp. at 679.  Further, upon determining that the warrant as issued did not comply with Rule 41,

the Court held that all evidence seized as a result of the execution of the warrant was to be

suppressed.  Id.

In the case at hand, the initial warrant for "the body of Demetrius Flenory" was obtained at

least at the direction of, if not by,[4] the USMS.  The search warrant for 5173 Brandywine was

---

[4] As is noted above, the Defendant has not been provided with the supporting affidavit or
application for this warrant, so the name of the affiant cannot be confirmed.  However, the
signature appears as if it could be that of James Ergas, the USMS Senior Special Agent who later
contacted Sergeant Hawkes regarding obtaining a search warrant for 5173 Brandywine.  Also, the
DEA-6 attached as Exhibit 4 states, on page 02990, "The United States Marshall's Service
(USMS) obtained a Texas State Warrant in order to breach the door of 5173 Brandywine, Frisco,
for the arrest of Demetrius Flenory."

obtained by Sergeant Hawkes of the Collin County, Texas, Sheriff's Office at the request of Senior S/A Ergas of the USMS.  When giving a narrative of facts supporting probable cause for this search warrant, Sergeant Hawkes makes it very obvious that he is relying entirely on information provided to him by a Federal officer.  The search warrant was executed by Sergeant Hawkes and by DEA Dallas agents.  All items seized as a result of the search warrant were placed into Federal custody.  Finally, the only charges resulting from this search were Federal charges in the Eastern District of Michigan.  This search therefore be considered a Federal search and must meet the requirements of a Federal search.

### C. The Affidavit Supporting the Search Warrant for the Search of 5173 Brandywine Contains Misstatements Made Deliberately or with Reckless Disregard for the Truth, and Omits Information Deliberately or with Reckless Disregard for the Truth; Without These Misstatements and/or with the Omitted Information, Probable Cause Would Not Exist for the Search, Thus Necessitating the Suppression of All Evidence Obtained as a Result of this Search

False statements in or omissions from an affidavit supporting a search warrant application may invalidate the search warrant.  Franks v. Delaware, 438 U.S. 154 (1978); United States v. Charles, 138 F.3d 257 (6th Cir. 1998).  For a search warrant to be invalidated and evidence to be suppressed based upon an allegation that the affidavit underlying the warrant contained misstatements or omitted information, the defendant must prove (1) that the misstatement or omission was made either deliberately or with reckless disregard for the truth and (2) that the affidavit without the misstatements or with the omitted information would not have provided probable cause for issuance of warrant.  Charles, 138 F.3d at 263-64.

In the affidavit in support of the search of 5173 Brandywine, Sergeant Hawkes of the Collin County Sheriff's Department begins by saying that on October 20, 2005, at 11:05 a.m., he

14

was contacted by Senior S/A James Ergas, USMS, who was requesting assistance.  Sergeant

Hawkes explains that S/A Ergas informed him that a warrant for the body of Demetrius Flenory

had been executed at 10:00 that morning "for outstanding federal warrants of possession of

marijuana with intent to distribute and possession of controlled substance, namely cocaine, with

intent to distribute."  This statement is incorrect and omits crucial information.

These warrants were not legitimately "outstanding"—if Walter Britt, the Fulton County,

Georgia, officer who applied for arrest warrants (or any other Fulton County officer) had actually

made any attempt to locate Demetrius Flenory to serve these warrants on him, Britt (or the officer)

would have learned that, in fact, Demetrius Flenory was currently on bond in Fulton County, and

would only have needed to contact Pre-Trial Services, the bondsman Demetrius Flenory had used,

or Demetrius Flenory's attorney of record in the existing Fulton County case to find out the

current whereabouts of Demetrius Flenory.  Claiming Demetrius Flenory was a "fugitive from

justice" seems to be nothing more than a tactic to allow a Federal law enforcement agency to take

jurisdiction in the case.

Also, the warrants for Demetrius Flenory's arrest were not Federal warrants but were

Fulton County, Georgia, warrants for State law violations.  Further, Sergeant Hawkes also

misstated the charges contained in the warrants.  While there was a Georgia State warrant for

possession of marijuana with intent to distribute, there was not a warrant for possession of cocaine

with intent to distribute, but instead only for possession of cocaine.

If the affidavit for this warrant had been accurate and had reported that, in fact, Demetrius

Flenory was not a fugitive from justice, it would have been obvious to any reviewing judge that

the officers who executed the warrant for the body of Demetrius Flenory had no probable cause to

obtain that warrant and so had no legal right to be in the residence located at 5173 Brandywine so as to view the marijuana the presence of which formed the basis for the search warrant for 5173 Brandywine.  Therefore, if the affidavit submitted to support the search warrant had not contained misstatements and had contained omitted information, thus presenting an accurate narrative as to the circumstances leading up to the affidavit and application, no probable cause would have been found for the search.  For that reason, all evidence seized as a result of the search of 5173 Brandywine should be suppressed.

> **D. Items Seized During the Execution of the Search Warrant at 5173 Brandywine Exceeded the Scope of the Search Warrant, Necessitating the Suppression of these Items**

It is well established, as is stated above, that the Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and <u>particularly describing… the persons or things to be seized</u>."  U.S. Const., Am. IV. (emphasis added).  The particularity requirement essentially serves two functions: first, there is a threshold level of particularity with which a warrant must describe persons or things to be seized to even be valid under the Fourth Amendment; second, once a valid warrant has been issued and is to be executed, the search is then limited to only those items named in the warrant (and supporting documentation, if referenced properly in the warrant).

Items seized which go beyond the scope of the warrant and which do not fit into an exception, such as being obviously related to the commission of a crime (<u>i.e.</u>, the "plain view" exception), are to be suppressed.  <u>Brindley v. Best</u>, 192 F.3d 525, 533 (6th Cir. 1999).  In <u>Brindley v. Best</u>, various owners of pawn shops and secondhand jewelers brought actions against law enforcement agencies alleging unlawful seizure of items.  <u>Brindley</u>, 192 F.3d at 528-29.  In one

instance, search warrants were issued for both the business owners' business and for their residence. Id., 192 F.3d at 533. However, the search warrant for their residence authorized only the seizure of records related to homeowners' pawn shop business. Id. Despite this fact, during the search of the residence, officers seized various personal items such as family photographs, home videos, and artwork. Id. The court held that this clearly exceeded scope of the search warrant because no reasonable officer could have believed these items to be within the scope of the search warrant. Id.

In United States v. Robertson, 21 F.3d 1030 (10th Cir. 1994), the Tenth Circuit addressed a case the facts of which are easily analogized to those of the case at hand. In Robertson, an individual had been carjacked, and, since he was in the process of moving, a number of items were in his car when it was stolen. Robertson, 21 F.3d at 1032. When the vehicle was located in an apartment complex parking lot, it was empty. Id. Further investigation led the police to an apartment in the complex where Robertson was living. Id. An agent interviewed Robertson (who gave a false name at the time) in the apartment and observed a few items that fit the description of some of the items that were in the vehicle when it was stolen. Id. Officers then obtained a warrant to search the apartment for the specific items that the agent had seen as well as "other instrumentalities and fruits of the crime of armed carjacking." Id. In executing the warrant, officers seized items identified by the carjacking victim as his property as well as a firearm, ammunition, traffic tickets issued to a third party, and photographs of "Robertson and others displaying gang signals and signs," and a book which had sticking out of it a receipt to the victim. Id.

Robertson challenged the search warrant itself, arguing that it was too general in its description of items to be seized, and Robertson also argued that the items seized by the officers exceeded the scope of the warrant.  Robertson, 21 F.3d at 1032.  The court held that the warrant itself was not too general because it was limited to items—specifically "instrumentalities" and "fruits"—related to a specific crime—carjacking.  Id., 21 F.3d at 1033-34.  The court then identified three items seized which were outside the scope of the search warrant, being neither "instrumentalities" nor "fruits" of the crime of armed carjacking: the ammunition, the traffic tickets issued to a third party, and the photographs of Robertson and others displaying gang symbols and signs.  Id., 21 F.3d at 1035.  The court held that the ammunition would not be suppressed under the "plain view" exception to the search warrant requirement "because its 'incriminating character' was 'immediately apparent.'"  Id., 21 F.3d at 1035 (citing Horton v. California, 496 U.S. 128, 136 (1990), and Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971)).  The court did rule, however, that the remaining two seized items in question, the tickets and the photographs, were to be suppressed because they were neither "fruits" or "instrumentalities" of the crime nor were they items whose incriminating character was immediately apparent, so the officer did not have probable cause to seize these items even if they were in plain view.  Robertson, 21 F.3d at 1035.

Sergeant Hawkes' affidavit for the search warrant for 5173 Brandywine indicated that he suspected that Demetrius Flenory criminally possessed marijuana and marijuana paraphernalia. Consequently, the affidavit asked for authorization to seize "marijuana and marijuana paraphernalia, firearms, computers, cellular telephones and currency gained in or used in the commission of delivery and possession of marijuana."  Interestingly, the DEA-6 regarding the

18

search of 5173 Brandywine claims that the warrant for the search of this residence was obtained "to further search the residence for narcotics, narcotic proceeds, and <u>documents regarding the Black Mafia Family (BMF) organization</u>."  (DEA-6 at 02991.)  The agents executing the search warrant at 5173 Brandywine may have wanted to look for evidence related to "the Black Mafia Family (BMF) organization," but they simply were not authorized by law to do so and seizing any items for this reason would have clearly exceeded the scope of the search warrant as granted.  To allow the officers to search for and seize these items would negate the requirements under the Fourth Amendment that the items seized must be within the scope of the search warrant, and that probable cause must be found by a neutral magistrate.  <u>See</u> <u>Gaston</u>, <u>supra</u>.

Many items seized as a result of this search far exceeded the scope of the items listed in that the officers seized documents, business cards, sales receipts, disposable cameras, jewelry, the title to a vehicle, and three separate vehicles.  These items cannot be said to be within the scope of the warrant issued for the search of 5173 Brandywine.  Further, none of these items would fall within the "plain view" exception.  Therefore, all of these items seized in violation of the Fourth Amendment should be suppressed.

### III.    CONCLUSION

There was no probable cause for a warrant to be issued for the search of 5173 Brandywine. Demetrius Flenory could not have been deemed a fugitive from Fulton County.  Therefore, the Atlanta-based USMS fugitive task force did not have reason to go to Texas to locate Demetrius Flenory, and did not have sufficient evidence to support probable cause for a warrant for the body of Demetrius Flenory.  Without this warrant, the USMS could not have been in a position to see marijuana in plain view in the residence located at 5173 Brandywine, and probable cause would

not have existed to support a search warrant for 5173 Brandywine.  Further, this search was a Federal search because of the extensive involvement of Federal officers in every stage of the preparation for, execution of, and analysis following this search, and should therefore be governed by the same laws and rules as would any other federal search.

The affidavit supporting the search warrant for 5173 Brandywine misstates the entire factual background of the case as well as the Georgia State charges against Demetrius Flenory. The affidavit was simply a collection of misstatements and omissions which if removed or added, respectively, would result in a finding of no probable cause for the search.  For these reasons, all items seized as a result of the search of 5173 Brandywine should be suppressed.  Finally, even if the search warrant were valid, several items seized exceeded the scope of the warrant and should be suppressed.

Respectfully submitted,

_s/Drew Findling_____
Drew Findling
The Findling Law Firm
3490 Piedmont Road NE, Suite 600
Atlanta, GA 30305
(404) 460-4500
drew@findlinglawfirm.com

Dated:  October 16, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Michael C. Liebson, Assistant United States Attorney; Dawn N. Ison, Assistant United States Attorney; and Julie A. Beck, Assistant United States Attorney, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: *none*.

 s/Drew Findling
The Findling Law Firm
3490 Piedmont Road NE, Suite 600
Atlanta, Georgia 30305
(404) 460-4500
drew@findlinglawfirm.com
