UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

CASE NO. 05-80955

HON. AVERN COHN

v.

D-2 DEMETRIUS EDWARD FLENORY,

        Defendant.
_____/

**GOVERNMENT'S BRIEF AND RESPONSE IN OPPOSITION
TO DEFENDANTS MOTION TO SUPPRESS EVIDENCE FROM SEARCH OF
<u>6086 BELAIR LAKE ROAD, LITHONIA, GEORGIA</u>**

Defendant Demetrius Flenory ("Defendant") filed a Motion to Suppress Evidence as to the search of 6086 Belair Lake Road, Lithonia, Georgia, challenging the sufficiency of the affidavit in support of the warrant. Defendant's motion should be denied because he had no reasonable expectation of privacy in the premises searched. However, even if the Court found he has standing, the warrant is sufficient and at the very least, falls under the *Leon* good faith exception to the exclusionary rule.

**I.   FACTUAL BACKGROUND OF WARRANT AND DEFENDANT'S CHALLENGES**

On November 17, 2003, Drug Enforcement Administration ("DEA") Task Force Officer John Koerts ("TFO Koerts") swore out an affidavit in support of a search warrant for 6086 Belair

1

Lake Road, Lithonia, Georgia.[1] The warrant was approved and executed that day by federal law enforcement agents and Task Force Officers from DEA.

The warrant noted that two Georgia statutes were implicated: Violation of Georgia Controlled Substances Act ("VGCSA"), namely, cocaine trafficking of more that 28 grams, and Possession of a Firearm During a Violation of VGCSA. The warrant application indicates that TFO Koerts has probable cause to believe that evidence of violations of the VGCSA would be found at 6086 Belair Lake Road including "[d]rug records, drug proceeds, firearms" to be further described in Schedule B, attached to the warrant application.

The affidavit in support of the warrant includes the following information. TFO Koerts' experience in being involved with over 100 search warrants which resulted in recovery of controlled substances, paraphernalia, currency, firearms, assets constituting proceeds of drug crimes and records of such activities. TFO Koerts then listed what he knows about drug trafficking and traffickers based on his training and experience. (Affidavit, ¶3, a-j). TFO Koerts next discusses the probable cause attendant to a search of 6086 Belair Lake Road. First, TFO Koerts describes Defendant as a drug trafficker prone to violence, having been the subject of Atlanta and Detroit investigations. TFO Koerts also describes Defendant's purported involvement in the murder of Dennis Walker, subject of a Detroit investigation who was murdered after being released from prison and after having cooperated as a witness in a federal drug case. (Affidavit, ¶¶ 5-7). Confidential Informant #1 ("CI #1) was the source of this information.

---

[1] Defendant argues that the warrant at issue is a federal warrant as opposed to a state warrant. The United States does not contest this issue.

TFO Koerts describes Defendant's contacts with drug traffickers in Atlanta and Detroit, noting Defendant's use of the aliases "Ronald Ivory," "Rico Seville" and "Aundrez Malik Carothers." (Affidavit, ¶¶ 8-12, 21-22). Paragraph 13 details Defendant's 1998 arrest pursuant to the stop of a 1998 Chrysler Sebring that had electronically controlled "traps" installed in it; handguns were found in the vehicle as well as $69,880 in cash, forfeited as suspected drug proceeds.

Information provided by CI #2 is set forth beginning ¶16, which is consistent with information provided by CI #1 regarding Defendant's alleged drug trafficking activities in the Atlanta and Detroit areas, use of a vehicle with a secret compartment, also referred to as a "trap," and his reputation for violence and use of firearms. CI #2 also provided information that, in 2001, Defendant resided in a large house off Evans Mill Road in Lithonia, Georgia. Agents followed up on CI #2's information, which led them to 6086 Belair Lake Road.

Agents then conducted follow-up investigation into 6086 Belair Lake Road, including a title search, which revealed that the house was not in Defendant's name but was in the name of a convicted heroin trafficker, Rowland Lamar Allen. (Affidavit, ¶18). Additional follow-up investigation from CI #2's information included surveillance of 6086 Belair Lake Road. Agents observed several vehicles at the location, including one vehicle registered to "Charles Flen." Agents knew that Defendant had indicated his father's name is "Charles Flenory." (Affidavit, ¶19). Further surveillance of the house was discontinued later in 2001 because it appeared that the house was unoccupied on a regular basis. (Affidavit, ¶20).

A third individual, Cooperating Individual #3 ("CI #3") identified Defendant from a photo array and stated that Defendant was seen with large amounts of cash despite not having a

3

legitimate job, possessed handguns, was associated with another Detroit drug trafficker, Thelmon Stuckey, and used alias names. (Affidavit, ¶23). Cooperating Individual #4 likewise recounted Defendant's possession of firearms, drug trafficking and money laundering activities and reputation for violence. (Affidavit, ¶24).

CI #1, noted for reliability and truthfulness in cooperating with law enforcement, provided additional information in 2003 as to Defendant's returned presence in the Atlanta area and association with and leadership of the "Black Mafia Family," or "BMF" (Affidavit, ¶25).

Again in 2003, a fifth Cooperating Individual, CI #5, reported on Defendant's involvement with luxury vehicles and an area strip club. CI #5 identified Defendant by photograph. Shortly after this information was received, a sixth cooperating individual, CI #6, that an individual affiliated with the same luxury vehicle dealership identified by CI #5, would be throwing a party at 6086 Belair Lake Road on June 22, 2003. (Affidavit, ¶¶ 26-27). CI #6's information was corroborated by agents who surveilled 6086 Belair Lake Road on June 22 and saw approximately 20 vehicles at the residence and individuals standing around in small groups outside. A wrought iron gate, newly operational since 2001, precluded drive-by surveillance and allowed only pedestrian surveillance. (Affidavit, ¶28). Cooperating Individual #7 attended the party on June 22, thus corroborating CI #6's information. CI #7 indicated that the host of the party was the self-proclaimed owner of the house and known to CI #7 as "Meechie," a nickname agents knew to be associated with Defendant. CI #7 identified Defendant as "Meechie" from a photo array. (Affidavit, ¶29).

CI #7 provided additional information about Defendant, including other BMF-related connections such as clothing and a tattoo. Other individuals at the party were similarly attired. CI

4

#7 also provided information about a handgun in a bedroom and jewelry worn by Defendant in addition to Defendant's use of marijuana at the party.

Based on this 2003 information, agents again researched the ownership of 6086 Belair Lake Road and discovered that Rowland Allen had transferred title to Tonesa Welch, of Sherman Oaks, California, and that another individual had been paid in the name of another individual, Melanie Dodson. At that time, TFO Koerts had no information that either Welch or Dodson lived at Belair Lake Road. (Affidavit, ¶31).

On June 23, 2003, another DEA TFO applied for a search warrant of 6086 Belair Lake Road, but the magistrate judge declined the warrant. It is unknown why the magistrate declined the warrant. (Affidavit, ¶32). Subsequently, DEA continued to investigate Defendant and other individuals associated with 6086 Belair Lake Road. Agents learned that Tonesa Welch, title owner of Belair Lake Road, is associated with Terry Flenory, Defendant's younger brother, also suspected to be a cocaine trafficker with connections to Detroit and Atlanta, among other states. Paragraph 34 provides details about Terry Flenory and indicates that Welch's ownership is suspected to be nominal. Similarly, paragraph 35 outlines Melanie Dodson's suspected use by Defendant as a nominee occupant of Belair Lake Road. Dodson was also identified via telephone records as being affiliated with the Flenory brothers. Also similar to Tonesa Welch, agents could find no evidence that Dodson had ever resided at Belair Lake Road.

Additional surveillance of Belair Lake Road during May through November of 2003 revealed vehicles there bearing license plates from several states. (Affidavit, ¶36). TFO Koerts then stated that Defendant had been arrested in Atlanta on November 11, 2003, having been charged with two murders. Defendant was identified as the shooter but was not arrested at the

5

scene, and when he was arrested, he was not in possession of a firearm. Subsequent to his arrest and during questioning, Defendant stated that he had no fixed address in Atlanta but that he lived in various places with various girlfriends. He did not mention Belair Lake Road as a location where he lived. (Affidavit, ¶37).

Based on all of the foregoing information, TFO Koerts applied for a search warrant to locate the missing firearm and to look for evidence of drug trafficking activities. Attached to the affidavit were Schedules A and B. Schedule B specifically listed "currency, precious metals, jewelry" as well as firearms, photographs and other indicia of drug trafficking activities. The search warrant was approved and executed on November 17, 2003, resulting in the recovery of a 9.mm firearm, a .45 caliber pistol, a .40 caliber Sig Sauer, ammunition, jewelry, marijuana, currency, documents, a ledger, a money counter and other items.

Defendant's challenges to this warrant include an unsupported claim that TFO Koerts included misstatements in his affidavit that were made deliberately or with reckless disregard for the truth and that without this information, there would not have been any probable cause to search 6086 Belair Lake Road. Further, Defendant challenges the use of CI information as well as information provided by cooperating individuals, who he claims were never, or were insufficiently, corroborated. Defendant thus requests that all items seized pursuant to the search be suppressed. Defendant further alleges that items seized exceeded the scope of the warrant and asks, in the alternative, that those items be suppressed.

In response to these charges specifically, the United States first avers that TFO Koerts did not make any misstatements deliberately or with reckless disregard for the truth. Any factual omission regarding Defendant's involvement in the November 11, 2003 shootings is irrelevant if

6

enough other information was provided on which the magistrate could rely. It is of no consequence that TFO Koerts did not include details surrounding what may have led to the shooting. He included enough important information to support a request to search Belair Lake Road for, among other items, a firearm that may have been used in the shootings. Defendant's argument that omitting the fact that he was not arrested at the scene was because he was shot and taken to the hospital by friends cuts both ways: according to Defendant's recounting of events, there was sufficient time and opportunity for Defendant to have hidden or disposed of a firearm. Moreover, Defendant's recounting of events is stated as factual without any other supporting evidence. Finally, Defendant's attack on the use of a confidential informant, who was referred to as reliable and truthful in cooperation leading to the conviction of other individuals, and cooperating individuals, who were largely corroborated by investigation or other cooperators, is overstated. When applying the "totality of the circumstances" test of *Illinois v. Gates*, 462 U.S. 213 (1983), this warrant is sufficient and provides probable cause to search Belair Lake Road. As for Defendant's argument that items seized exceeded the scope of the search, the affidavit and application discuss "drug proceeds" and assets, specifically listing cash and jewelry as proceeds The warrant also lists photographs as items to be seized and why photographs can be indicia of drug trafficking activity. Thus, Defendant's claim that items seized exceeded the scope of the warrant is spurious at best.

## II. LEGAL ARGUMENT

### A. **Defendant did not have a reasonable expectation of privacy in the premises searched, so he cannot challenge the warrant.**

Defendant does not assert that he had a reasonable expectation of privacy in the premises searched, nor can he establish that he had a reasonable expectation of privacy in the premises

searched. Consequently, Defendant's motion fails on this basis.

The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Amendment is a personal right to be invoked by an individual. *See Katz v. United States,* 389 U.S. 347, 351 (1967) ("[T]he Fourth Amendment protects people, not places"). The Supreme Court has held that "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). *See also Rawlings v. Kentucky,* 448 U.S. 98, 106 (1980); *Katz v. United States*, 389 U.S. 347 (1967).

To have standing to mount a Fourth Amendment challenge, a person must have a subjective expectation of privacy in the premises searched. *Minnesota v. Olson,* 495 U.S. 91, 95-97 (1990). The expectation must be reasonable. *Rakas*, 439 U.S. at 143-44, n. 12. "Reasonableness" is based on "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.,* at 143-144, and n. 12. *See also Smith v. Maryland,* 442 U.S. 735, 740-741 (1979). The Defendant has the burden of proof to establish the standing necessary to assert a Fourth Amendment violation. *United States v. Smith,* 263 F.3d 571, 582 (6th Cir.2001).

Defendant has claimed a Fourth Amendment violation, namely, that the warrant to search the premises at 6086 Belair Lake Road, Lithonia, Georgia, was insufficient such that all items seized pursuant to that search should be suppressed. However, Defendant has not satisfied his

burden of showing that he had a reasonable expectation of privacy in the premises searched. According to the affidavit, Defendant had not resided at Belair Lake Road, and according to his own statements on November 11, did not have a residence in the Atlanta area but rather lived with various girlfriends. The affidavit outlines an investigation into the ownership of Belair Lake Road, indicating that Tonesa Welch had received title to the property after Rowland Allen, and Melanie Dodson was listed as the individual paying bills there. Also, when agents conducted the search, there were no specific indications as to Defendant's presence through personal effects or was otherwise a resident or guest there.

A determination of whether an individual has a legitimate expectation of privacy involves a two-part inquiry:

> First, we ask whether the individual, by conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private. . . . Second, we inquire whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable.

*Bond v. U.S.*, 729 U.S. 334, 120 S.Ct. 1462, 1465 (2000) (citations omitted). In this case, Defendant had no possessory or proprietary interest in the premises. Neither was he on the premises, nor was there any indication he lived there. *See Mancusi v DeForte*, 392 U.S. 364, 368 (1968). He has not asserted that he had a reasonable expectation of privacy, nor is there any other support for such a claim.

Simply put, Defendant has not satisfied his burden of showing *his* Fourth Amendment rights have been violated because he has not established he had a reasonable expectation of privacy in the premises searched. Accordingly, his motion must fail.

> **B.     The search warrant for 6086 Belair is supported by probable cause.**

As detailed above, agents investigated the Atlanta-based drug trafficking activities and

other gun crimes of Defendant and his associates. TFO Koerts outlined this investigation, providing information from a reliable informant, corroborated information from cooperating individuals as well as other evidence derived from the investigation conducted by DEA agents and TFOs. There was more than enough probable cause to support a search of 6086 Belair Lake Road, and there were more than enough details provided as to what items were likely to be found. Importantly, the items sought were found: firearms, ammunition, jewelry, cash, marijuana and other indicia of drug trafficking activities.

Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion, *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990), that "there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238. This determination does not lend itself to the application of "[r]igid legal rules," and no one decision may serve to provide a definitive basis upon which to rely inasmuch as "informant's tips, like all other clues and evidence ... may vary greatly in the value and reliability." *Gates,* 462 U.S. at 232. Instead of reviewing probable cause based on rigid rules, the probable cause standard is a " 'practical non-technical conception ... [wherein] we deal with probabilities ... [which are] the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Id.* at 231 (quoting *Brinegar v. United States,* 338 U.S. 160, 175-76 (1949)). *Gates* continues:

> probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons.... Rigid legal rules are ill-suited to an area of such diversity. One simple rule will not cover every situation.

*Id.* at 232 (citation and internal quotation marks omitted). Against this backdrop, the reviewing

magistrate must apply a "totality of the circumstances" test to probable cause issues. *Id.* at 238. This test requires the magistrate to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying the hearsay information," probable cause exists. *Id.*

In this case, based on the totality of the circumstances, probable cause existed that the items described would be found at 6086 Belair Lake Road. As discussed *supra*, CI #1 was referred to in detail as a reliable source. CI #2 was corroborated. CI #s 4, 5 and 7 all identified Defendant. CI #s 2, 5 and 7 were further corroborated, CI #7 having been in attendance at the party and having seen a firearm and marijuana present at Belair Lake Road. Moreover, TFO Koerts' careful investigation included surveillance and two title searches of the property that linked Defendant and his brother, as well as his father, to the search location. Nominee ownership and occupancy were established, which are additional indications of an individual who is concealing ownership from law enforcement detection and seeking to legitimize assets. Defendant's assertion that no probable cause existed is baseless and not supported in fact or in law.

Importantly, deference should be paid a magistrate's finding that probable cause existed for the warrant, which finding should not be set aside unless the magistrate's discretion was arbitrarily exercised. *U.S. v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993) (quoting *U.S. v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986)) (citing *Gates*, 462 U.S. at 236). There is simply no evidence or credible assertion that the magistrate acted arbitrarily, and as such, his probable cause finding should not be disturbed.

    **C.    Even if the warrant were determined to be invalid, the agents acted with good faith in executing the warrant, which under *Leon*, precludes invocation**

    **of the exclusionary rule.**

  In *Leon*, the Supreme Court held that the Fourth Amendment exclusionary rule should not be applied to suppress evidence where the officer involved had an objective reasonable reliance on a search warrant approved by a neutral and detached magistrate judge. *U.S. v. Leon*, 468 U.S. 897, 905 (1984). None of the scenarios for finding the good faith exception appropriate are present here: (1) the magistrate judge was not misled by false information or information provided with a reckless disregard for the truth; (2) the magistrate judge acted in a neutral and detached fashion and was not a rubber stamp for the officer; (3) the affidavit was not merely bare bones and so lacking in probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant was particular as to the place to be searched and the items to be seized.

  TFO Koerts presented a complete picture of his investigation through 2003 and provided reliable, corroborated information to the magistrate. The magistrate reviewed all of the information and approved the warrant. Acting in good faith after having presented the affidavit for review by the magistrate, DEA agents and Task Force Officers executed the warrant at 6086 Belair Lake Road. There is no indication whatsoever that each individual in the process did not act in good faith. Accordingly, even if the Court were to find that Defendant had a reasonable expectation of privacy in the premises searched and that there was no probable cause, clearly *Leon's* good faith exception to the exclusionary rule would apply and mandate that Defendant's motion be denied.

**III. CONCLUSION**

  Based on the foregoing, the United States requests that Defendant's motion be denied

because he failed to assert a Fourth Amendment challenge to the warrant due to his lack of standing. Alternatively, Defendant's motion should be denied because the warrant was based on sufficient probable cause or because *Leon's* good faith exception to the exclusionary rule applies.

13

Should Defendant's motion require an evidentiary hearing, the Government proposes that a hearing take place during trial before any of the evidence seized from Belair Lake Road is introduced. This would be more efficient for the officers and agents who would be required to testify. If after a hearing the motion is denied, the officers would be present and could testify at trial shortly thereafter, thus streamlining the trial process and saving resources.

Respectfully submitted,

STEPHEN J. MURPHY
United States Attorney

s/Michael C. Leibson
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9615
Michael.Leibson@usdj.gov
[P 24092]

s/Dawn N. Ison
Assistant United States Attorney
(313) 226-9567
Dawn.Ison@usdoj.gov
[P 43111]

s/Julie A. Beck
Assistant United States Attorney
(313) 226-9717
Julie.Beck@usdoj.gov
[P53291]

Dated: October 30, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system. All ECF participants will be electronically notified via the Court's Electronic Case Management System.

        s/ Julie A. Beck
        Assistant United States Attorney
        211 W. Fort Street, Suite 2001
        Detroit, Michigan  48226-3211
        (313) 226-9520
        Julie.Beck@usdoj.gov
        [Bar No. P-53291]