UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case Number 05-80955
Honorable David M. Lawson

DEMETRIOUS FLENORY,

Defendant.
_________________________________/

**OPINION AND ORDER DENYING SECOND MOTION FOR RESENTECING, RELEASE, OR RECOMMENDATION**

Defendant Demetrious Flenory returns to court with his second motion to reduce his prison sentence to time served under the compassionate release provisions of 18 U.S.C. § 3582(c). The Court denied his first motion because Flenory had not exhausted his administrative remedies, and the Court found that he did not present sufficient reasons to excuse the statutory exhaustion requirement. Since that opinion was filed, the court of appeals has held that the exhaustion requirement is mandatory and cannot be excused if the government asserts it as an affirmative defense. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). That case does not impact Flenory's latest motion. But the reasoning in this Court's last opinion for refusing to excuse the exhaustion requirement furnishes much of the bases for denying Flenory's motion on the merits. Under the statutory section he relies on, he must show extraordinary and compelling reasons to shorten his sentence. He has not done so here. His motion will be denied.

I.

As discussed in the previous opinion, Flenory was the leader of an extensive drug trafficking organization known in Detroit and elsewhere as the Black Mafia Family (BMF), which

employed over 500 people and distributed massive quantities of cocaine across several states. Flenory's exploits were notorious, owing in part to his formation of an entertainment music company (BMF Entertainment) that promoted several hip-hop artists and also served as a front organization to conceal evidence of drug trafficking activity. All of that earned him a 30-year prison sentence after he pleaded guilty to maintaining a continuing criminal enterprise, 21 U.S.C. § 848, and conspiracy to launder monetary instruments, 18 U.S.C. § 1956(h).

Flenory presently is confined by the Bureau of Prisons (BOP) at FCI Sheridan in Sheridan, Oregon. He is 51 years old. His medical records show that he suffers from hypertension (high blood pressure) (benign essential), hyperlipidemia (high blood cholesterol), esophageal reflux, and low back pain. He now adds that he suffers from obesity with a Body Mass Index (BMI) of 30.4. According to the CDC, a BMI of 30 or more is considered obese. *See* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html.

The BOP reports that no staff members and two inmates have tested positive for COVID-19. https://www.bop.gov/coronavirus/ (last visited July 26, 2020). On July 6, 2020, Flenory filed a supplemental brief in which he states that one inmate and *eight* staff members tested positive for the virus. Flenory says he obtained this information from a filing in another case in the Eastern District of California where the government in its response to a motion for compassionate release stated that "[c]urrently, there are zero inmates and 8 staff diagnosed with COVID-19 in Miles' facility, FCI Sheridan." Flenory's counsel contacted the Assistant United States Attorney who submitted the response and confirmed that what was in the brief — eight (8) FCI Sheridan staff members had indeed tested positive — was accurate at the time she wrote it. The District Court for the Eastern District of California also relied on this factual statement in denying that defendant's motion for early release. *See United States v. Miles*, No. 2:17-cr-00127, 2020 WL

3256923 at *2 (E.D. Cal. June 15, 2020) ("According to the government, there have been zero inmates and eight staff diagnosed with COVID-19 at defendant's current facility.").

Flenory continues to argue that his medical conditions of slight obesity, high blood pressure and his age make him more susceptible to contracting a severe case of COVID-19. He again relies on the previously filed affidavits from health care professionals attesting to the danger of the spread of the virus in a prison environment and stating that Flenory is at an increased risk.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *Alam*, 960 F.3d at 832 (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Flenory relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, the "reduction is consistent with

applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government offers several reasons for denying release. It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Flenory has invoked section 3582(c)(1)(A)(i), which contains no such requirement.

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

The pertinent factors weigh against granting compassionate release, which is an extraordinary remedy requiring "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A). None will deny that the novel coronavirus is an extraordinary and contagious organism. There is currently no approved vaccine or antiviral treatment for COVIF-19, the disease

caused by the virus. Dr. Anthony Fauci, director of the National Institute of Allergy and Infectious Diseases, estimated that between 100,000 and 240,000 people in the United States will die from COVID-19 related complications, and his grim forecasts are proving accurate. Michael D. Shear *et al.*, Coronavirus May Kill 100,000 to 240,000 in U.S. Despite Actions, Officials Say, N.Y. Times, Mar. 31, 2020, https://www.nytimes.com/2020/03/31/us/politics/coronavirus-death-toll-united-states.html. And the Centers for Disease Control and Prevention (CDC) have advised that certain traits among the population predispose certain individuals to complications from the virus, should they become infected.

Flenory possesses very few of those traits. The only conditions which come close to risk factors are his high blood pressure and high cholesterol. His medical records show that they are treated with medication and have not resulted in any serious or severe complications. But even accepting that Flenory's medical conditions put him at some elevated level of risk, which is not a given, he still has not demonstrated that he is entitled to the extraordinary remedy of compassionate release. It now appears that the virus has been detected at FCI Sheridan. But the spread appears to be contained, and appropriate precautions are being taken, according to the government.

Moreover, Flenory must still demonstrate that the factors under 18 U.S.C. § 3553(a) favor a reduction in his prison sentence. He has served a large portion of his sentence, but he still has 136 months remaining (or 100 months by his count, if he can show that he is entitled to a reduction under United States Sentencing Guidelines Amendments 782 and 790). Flenory has an extensive criminal history, with previous convictions on various drug, weapons, and assaultive offenses. And over the course of his incarceration, Flenory has lost a combined 135 days of Good Conduct Credit for various serious disciplinary violations, some of which resulted in placement in solitary confinement. His offenses include having a cell phone, using another inmate's prison account to

purchase items at the commissary, possessing and using intoxicants, and possessing a small piece of a razor blade.

The sentence in this case (as in every case), and therefore a sentence reduction, also must promote respect for the law. 18 U.S.C. § 3553(a)(2)(A). Flenory led one of the largest drug trafficking organizations in the history of this district. He received a 30-year sentence because of the serious nature of his crimes. Although Flenory now says he is reformed, his past actions must still be accounted for. And although Flenory may be well-known in the community and says he intends to use his profile for good, a sentence reduction still must be based on circumstances that are "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). The facts here fall short of such a demonstration.

Compare, for example, *United States v. Rodriguez*, No. 03-cr-00271, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020). There, the defendant was in year 17 of a 20-year sentence. He had significant health issues including Type 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity, and liver abnormalities. He was housed at a facility with confirmed cases of COVID-19. He had a good prison record and showed improvement in prison. Notably, the district court determined that none of those factors (length of sentence, health condition, and prison record) alone were sufficient to warrant release. However, when taken together, they persuaded the court that release was warranted.

In *United States v. Coker*, No. 14-085, 2020 WL 1877800 (E.D. Tenn. Apr. 15, 2020), the defendant was wheelchair-bound with severe terminal chronic obstructive pulmonary disease that required oxygen therapy, which the BOP admittedly could not provide. The district court therefore found that the request for relief demonstrated a serious enough condition to warrant release even in the absence of heightened risk from COVID-19.

And in *United States v. Saad*, No. 16-20197, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020), the defendant had served 33 months of a 72-month sentence for a non-violent drug offense. He was 71 years old and housed at FCI Milan, which has several confirmed cases of COVID-19. He also suffered from a host of medical conditions, including kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, diabetes, back problems, and a frozen thigh from an overdose of coumadin given by prison officials. He also had heart surgery and knee replacement surgery. He had also recently been diagnosed with recurrent bladder cancer. The district court concluded that this combination of serious medical conditions plus the time he had served on a non-violent offense justified reducing his sentence and release to home confinement.

The only conditions that come close to risk factors are Flenory's high blood pressure and high cholesterol. But those conditions remain well controlled with medication. They do not counterbalance the several factors that weigh heavily against a sentence reduction. And they fall far short of meeting the high bar erected by section 3582(c)(1)(A)(i).

III.

Flenory now has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's second motion for compassionate release (ECF No. 1637) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 29, 2020